CARROLL v. ERTHEILER.*

(Circuit Court, E. D. Pennsylvania. April 6, 1880.)

TRADE-MARK—NAME—INFRINGEMENT.—Where the dominating charac-
teristic of a trade-mark is a name by which the manufacturer's goods
have become familiarly known to the public, another manufacturer has
no right to designate his goods by that name, even though he accompa-
nies it with a different device.

DISTINCTION BETWEEN CIGARETTES AND SMOKING TOBACCO.—Although
the revenue laws distinguish between cigarettes and smoking tobacco,
there is no such substantial difference as will justify a manufacturer of
cigarettes in applying to them a name which has become the well-recog-
nized designation of another manufacturer's smoking tobacco.

Complainant, a manufacturer of smoking tobacco, used a trade-mark
consisting of the name "Lone Jack," with an accompanying device, and
his tobacco became known to the public by that name. Respondent
subsequently commenced manufacturing cigarettes, using a trade-mark
with the name "Lone Jack," accompanied with a device different from
that of complainant. Held, that complainant was entitled to an injunc-
tion.

PRACTICE—EVIDENCE—PREPARATION OF AFFIDAVITS.—Where affidavits
have been prepared and printed without seeing the witnesses, and sent
over the country to be signed by those who might be found willing to
do so, the statements therein are not regarded with confidence by the
court.

Motion for a preliminary injunction.

The bill set forth that complainant had for over 16 years
manufactured smoking tobacco, and had adopted, and con-
tinuously and exclusively used during that time, a trade-mark,
a prominent characteristic trait of which was the arbitrarily
selected word-symbol "Lone Jack;" that he affixed this trade-
mark, by means of printed labels and wrappers, to his smoking
tobacco, which was put up in various styles of packages, in-
cluding the form commonly known as cigarettes; that although
the said word-symbol "Lone Jack" was generally used in
connection with certain words, being advertisements of his
name and place of business and other matter, and frequently
the name of the specific article and the representation of the
bust of a man smoking, still complainant's smoking tobacco
came to be popularly known among merchants and consumers

*Reported by Frank B. Prichard, Esq., of the Philadelphia bar.

by the peculiar distinctive designation of "Lone Jack," and was bought and sold under that name; that respondent, intending wrongfully to usurp complainant's reputation, and to deceive the public into supposing that they were buying complainant's tobacco, colorably imitated complainant's trademark, and in July, 1879, began to affix to goods of substantially the same descriptive properties as complainant's the word-symbol "Lone Jack," and to sell smoking tobacco wrapped in papers and bearing a label containing, as its most prominent characteristic, *the said word-symbol,* and that the public had been deceived thereby into buying respondent's tobacco, supposing it to have been manufactured by complainant. The bill prayed for an injunction and account.

The answer denied that complainant had any proprietary or exclusive interest in the word-symbol "Lone Jack" by itself, and alleged that complainant's trade-mark only gave him the right to use the words "Lone Jack" in connection with the words "The Celebrated" above the bust of a man smoking a pipe, and with the words on each side of said bust, "Or seek no further, for better can't be found," and below said bust the words "Smoking tobacco, manufactured by John W. Carroll, Lynchburg, Virginia." It denied that complainant had ever applied said trade-mark to cigarettes, or to any other article than smoking tobacco, or that he had made or sold cigarettes by the name of "Lone Jack." It alleged that what is known by smokers and to the trade as smoking tobacco is a distinct article of merchandise from cigarette tobacco, and cannot be used for the manufacture of cigarettes, and that cigarette tobacco paid a special tax to the United States government. It further alleged that respondent had, in May, 1879, adopted and was entitled to a trade-mark for cigarettes consisting of the words "Lone Jack" above and the word "Cigarettes" below the figure of the jack of spades, and the name "Ertheiler & Co., New York," below, and "The best" below all; and that the sales of cigarettes under this trade-mark were the only sales by defendant complained of by plaintiff. The answer further denied that there

was any resemblance between the trade-marks, or any attempt at imitation; or that respondent had any intention to usurp complainant's reputation, or deceive the public; or that the public were deceived. Both parties filed affidavits in support of the facts respectively alleged in the bill and answer.

*William Henry Browne* and *George Harding*, for complainant.

*Field, Dorsheimer, Bacon & Deyo*, for respondent.

BUTLER, J. It would be unwise to say more at this time than is necessary to explain the action of the court in disposing of the interlocutory motion now before it. The plaintiff's exclusive right to the trade-mark, as a designation of his smoking tobacco, is not doubted.

The defence rests upon a denial—*first*, that the defendant has used the trade-mark; and, *second*, that he has used it as a designation of "smoking tobacco." The second branch may, most conveniently, be noticed first. While the revenue laws, for purposes of taxation, distinguished between smoking tobacco and cigarettes, there is, we believe, no substantial difference. Cigarettes consists of smoking tobacco, similar in all material respects to that used in pipes. The circumstance that a longer "cut" than that commonly used in pipes is most convenient for cigarettes is not important, nor that the tobacco is smoked in paper instead of pipes. It may all be used for either purpose, and is all embraced in the term "smoking tobacco."

We do not believe the public or the trade draw such a distinction as the defendant sets up. We have not overlooked the statements contained in his affidavits, but the method pursued in obtaining this testimony, generally, does not recommend it to our confidence. The affidavits seem to have been prepared without seeing the witnesses, and sent over the country to be signed by those who might be found willing to sign them. They are, generally, similar in language, and printed. This method of obtaining testimony is not worthy of encouragement. If the public and trade draw such a distinction, and, therefore, do not suppose the defendant's cigarettes to be made of the plaintiff's tobacco, (and the defendant

so understands,) why does he adopt the designation by which this tobacco is familiarly known, and persist in using it?

The dominating characteristic of the plaintiff's trade-mark is the *name* "Lone Jack." His tobacco has come to be known and described by this name, throughout the country, to such an extent that the accompanying device has ceased to be important, if it ever was so,—doubtless rarely observed, and slightly remembered. At home and abroad, to the trade and the public, it is familiarly known as "Lone Jack," and is thus designated as the plaintiff's manufacture by purchasers and sellers.

The defendant's application of this name to his smoking tobacco is an adoption and use of the essential part of the plaintiff's trade-mark. Surrounding it with a different device signifies nothing to the public, who attach no importance to the device of the plaintiff. The defendant's name upon the cigarettes, if recognized, (and it would not be without close inspection,) would not inform the public that the tobacco is not of the plaintiff's manufacture. That the defendant's act is calculated to mislead can hardly be doubted; that it has misled, the plaintiff's affidavits, we think, show; and the inference that the defendant supposed it would mislead, and intended it should, cannot well be avoided. Why otherwise did he adopt this particular name? He knew it to be the recognized designation of the plaintiff's tobacco, which had become popular with consumers and the trade. Did he not expect the public to be influenced thereby and his business increased? An affirmative answer cannot well be avoided. If he did not, however, the injunction will do him no harm, for he has not yet had time to establish a reputation of his own under this name.

Whether the plaintiff commenced putting up his tobacco in the form of cigarettes before the defendant applied the designation "Lone Jack" to his cigarettes need not be considered at this time.

The law involved is, we believe, well settled, and is so fully stated in every aspect suggested by the learned counsel for the defendant in *McLane* v. *Fleming*, 6 Otto, 245, and *Singer*

*Sewing Machine Co.* v. *Wilson*, 3 Law Reports, (appeal cases,) 376, that no more is deemed necessary than a reference to these cases.

A preliminary injunction as prayed for will be granted.

An injunction was subsequently issued restraining respondent, until the further order of the court, from selling cigarettes or smoking tobacco in any form bearing the trade-mark "Lone Jack."

NOTE.—See *Sawyer* v. *Horn, ante,* 24.