## CAUFFMAN v. SCHULER.

### (Circuit Court, D. New Jersey. May 29, 1903.)

**1. UNFAIR COMPETITION—IMITATION OF LABEL.**

To warrant restraining the imitation of the label on complainant's goods, it is sufficient if the imitation be close enough to deceive the unwary, incautious, or ignorant purchaser.

**2. SAME—SUFFICIENCY OF EVIDENCE.**

Complainant was the manufacturer of a bottled beverage known to the trade as "Cauffman's Ginger Brandy." Defendant sold a similar article; his label being of the same size, shape, and color as that of complainant. The color, size, and position of the printed matter were alike. The description setting forth the nature and quality of the article, as well as the division of the label into lines, and its decoration with scrolls, and the location of the manufacturer's title, were similar. Defendant used a "caution" label of the same size, color, and arrangement of printing as complainant, and possessing a subscription of the maker's title. The word "Imperial" was substituted for "Cauffman's," and the word "Celebrated" was omitted, and the wording of the "caution" and the name subscribed thereto were dissimilar. *Held*, that defendant's use of his label would be enjoined.

Eugene Treadwell, for complainant.
Halsey M. Barrett, for defendant.

KIRKPATRICK, District Judge. The bill in this case recites that the complainant is engaged in the business of manufacturing and selling a beverage or stimulant known as "Ginger Brandy"; that the business was begun by his father in 1856, and has been continued ever since by him or his successors, and the product thereof has been

¶ 1. Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper, 30 C. C. A. 376.

well known to the trade and public generally as "Cauffman's Ginger Brandy." In 1895 the complainant adopted a special label or wrapper, with special matter printed thereon, to be affixed to the bottles in which his ginger brandy was offered for sale, and by which label the product of his factory might be known. The complainant claims to have been the exclusive user of this label, and that his use has been general and continuous, so that his product has become known to the general trade and users by this distinguishing mark. The bill charges the manufacture and sale by the defendant of an article in imitation of complainant's goods, calculated to deceive the public into purchasing the same as complainant's goods. Accompanying the bill are samples of the goods of complainant, marked "Complainant's Exhibit Label No. 1," as well as exhibits of defendant's label, marked "Complainant's Exhibits 2, 3, and 4, Defendant's Label."

There is no denial by defendant of his use of labels like the complainant's Exhibits 2, 3, and 4, and the sale of his ginger brandy in bottles to which such labels are attached, so that the only question presented to the court is whether the defendant's labels are so nearly like those of complainant as to cause confusion in the minds of intending purchasers, whereby they would be apt to mistake the goods of the defendant for those of the complainant. It is not necessary that the resemblance should be such as would deceive first or intelligent purchasers. It is sufficient if it be calculated to deceive the unwary, the incautious, or the ignorant purchaser. Neither need the resemblance be so great that one would be deceived who should see the labels placed side by side. If an ordinary purchaser, looking at the article offered to him, would naturally be led, from the label attached to it, to suppose it to be the product of a rival manufacturer, and would purchase it in that belief, the court will enjoin the use of such article as fraudulent. This being the well-settled law, the only question presented is one of fact, viz., is the defendant's label calculated to deceive the ordinary purchaser of that character of goods? If we examine the exhibits, we will see that the size, shape, and color of the labels are the same; that the color and size and position of printed matter on the labels are alike; that the descriptions setting forth the nature and quality of the article, as well as their division into lines, and the decoration of the label with scrolls, and the location of the manufacturer's title, are similar. It will be observed that the defendant uses a separate "caution" label, and that it is of the same size, color, and arrangement of printing; also that it has a subscription of maker's title. It is true that there are differences in labels, such as substitution of the words "Imperial" for "Cauffman's," the omission of the word "Celebrated," and other differences, such as the wording of the "caution" and the name subscribed thereto. It is not, however, the dissimilarities which are the test, but the resemblances. As was said by Judge Lacombe in Hansen v. Siegel-Cooper Company (C. C.) 106 Fed. 690: "It is possible, but highly improbable, that two persons, neither of whom had ever seen or been informed of the other's design, might have produced packages as similar as the two before the court." I am unable to account for the

numerous resemblances referred to, except as the result of design. There should be but one motive for dressing defendant's goods in a garb so nearly like complainant's, and that was to acquire a part of the trade which the complainant had built up for his goods, and engage in a competition in trade, which the courts of equity hold to be unfair.

Let an injunction be prepared in accordance with the prayer of the bill.