# WALTER BAKER & COMPANY, LIMITED *v.* HARRISON.

TRADEMARKS; SIMILARITY OF MARKS.

Coffee and cocoa, when used as beverages, are goods of the same descriptive qualities and properties; and an application for registration of a mark as a trademark for coffee, consisting of the word, "Quaker," associated with the picture of a woman wearing, among other things,

a cap and apron, and carrying a tray with a cup on it, will be denied when a picture so similar as to constitute substantially the same design has been for many years used by another as a trademark for cocoa products used as beverages, and has been registered.

No. 517.  Patent Appeals.  Submitted November 16, 1908.  Decided December 22, 1908.

HEARING on an appeal from the decision of the Commissioner of Patents sustaining a demurrer in opposition to the allowance of a trademark.                                      *Reversed.*

The facts are stated in the opinion.

*Mr. William L. Putnam, Mr. James L. Putnam,* and *Mr. Horace A. Dodge* for the appellant.

*Mr. Edward T. Fenwick* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This case comes here on appeal from a decision of the Commissioner of Patents affirming a decision of the Examiner of Interferences sustaining a demurrer to the opposition filed by appellant, Walter Baker & Company to the allowance of a trademark to appellee, John W. Harrison. It appears that the appellee filed an application in the Patent Office for the registration of a trademark for coffee. The mark consisted of the word "Quaker," together with a picture of a woman wearing a cap and apron and carrying a tray with a cup on it. The trademark which the appellants are seeking to protect by the opposition consists of the picture of a woman wearing a cap and apron and carrying a tray with cups upon it. The style of dress shown in each mark is the same, being the style at once recognized as that of a Quaker lady.

Appellant, it appears, has used this mark on various cocoa products for many years, first registering it as a trademark in 1883, and registering it again in July, 1905. In the statement

filed at the time of the application for registration, the use of the mark is described as follows: "The classes of merchandise to which the trademark is appropriated are beverages, confectionery, and foods, and the particular description of goods comprised in said classes upon which said trademark is used is cocoa, chocolate, broma, and cocoa preparations." The registration of appellee's mark is opposed on the ground that, because of its similarity to appellant's mark, its use will tend to create confusion in trade, and work serious injury and damage to appellant; and that the goods upon which the mark is sought to be used by appellee are of the same descriptive qualities, and contain the same descriptive properties, as the goods upon which the mark of appellant is used.

The question of the similarity of the marks is not an open one. They are so similar as to constitute substantially the same design, and, if sought to be used on goods of the same descriptive properties, such use would be prohibited. We think the opposition in this case is well founded in so far as the use of the marks being upon goods of the same descriptive properties. This would seem clearly so as a matter of general knowledge and observation, and whatever question of fact is involved on this point should have been left open for the submission of proof. The products of the cocoa bean and the products of the coffee bean are applied to the same general use. Things may be said to possess the same descriptive properties when they can be applied to the same general use. Coffee and cocoa, when used as beverages, are at once associated as belonging to the class of beverages in general domestic use. They belong to the class of beverages universally used on the table and sold in prepared packages for that purpose. Should the same mark be granted to different persons for use on coffee and cocoa, respectively, the natural and certain result would be, that the one wishing to profit by the use of the same mark would adopt the style of package used by the other, and, by such unauthorized imitation, cause confusion in the mind of the purchasing, consuming public as to the quality of the goods so marked. The intent of the statute is to protect the rightful owners of trademarks in their valuable prop-

erty rights; and it seems to tax the courts to the utmost to pro-
tect those rights against the ingenuity of counsel and the de-
signs of sharp competitors. A mark should be denied not only
when used upon goods of the same descriptive properties as a
similar registered mark, but when used on goods belonging to
the same general class.

In the early case of *Collins Co.* v. *Oliver Ames & Sons Corp.*
18 Fed. 561, decided by Mr. Justice Blatchford, it appeared that
Collins & Company were manufacturers of axes, hatchets, and
other edged tools, and their products had high reputation, not
only in this country, but in other countries, notably Australia.
Oliver Ames & Sons were manufacturers of shovels, and, wish-
ing to build up a trade in Australia, marked their shovels "Col-
lins & Company." Applying the law to this state of facts, the
learned justice said: "It appears that the axes and other arti-
cles made by the plaintiff, and which before that time were
known and used in Australia, were stamped 'Collins & Com-
pany.' Therefore, although the shovels made by Ames & Sons
under this order and subsequently, and stamped 'Collins & Com-
pany,' and sent to Australia and elsewhere, may intrinsically
have been of high quality, yet the only object of the defendant in
putting the stamp 'Collins & Company' upon them must have
been to avail himself of the credit and reputation and market
which the plaintiff had established for the articles it made and
sold with the stamp 'Collins & Company' upon them. There
was no other purpose in this. Clearly, those who purchased
shovels made by Ames & Sons and stamped 'Collins & Company'
would believe that such shovels were made by the plaintiff, for
there was no other Collins & Company than the plaintiff. . This
was an unlawful appropriation of the plaintiff's trademark. It
is true that the plaintiff up to that time had made no shovels.
It is also true that Ames & Sons and the defendant have built
up a business in shovels stamped 'Collins & Company.' But
the plaintiff had a right to make shovels, and it had made kin-
dred articles of metal, and its good name and reputation in its
business were wholly connected with the use, in its trade, of the
mark 'Collins & Company.'" The decision, we conceive, would

have been the same had Ames & Sons attempted to use the mark on any other implement belonging to the general class of tools manufactured for, and dealt in as a part of, the hardware business. In the case of *Church & D. Co.* v. *Russ,* 99 Fed. 276, the plaintiff was a manufacturer of saleratus, who had adopted a certain trademark. This mark was imitated by defendant on baking powder. The court said: Soda and baking powder are used for the purpose of leavening or lightening dough in the manufacture of bread and cakes, as well as for other domestic uses. They are generally handled by the same class of dealers, and are purchased by the same class of customers. Either is indifferently used, as may be most convenient, to accomplish the same object. To the extent that baking powder is used, to that extent it will necessarily displace the use of soda for baking purposes. They belong to the same class of goods, coming in direct competition with each other in sale and use for the same purpose. The public would readily suppose that the baking powder bearing the complainant's trademark was either manufactured by it, or by some one having its authority and consent; and that it vouched for the superiority and high character of the goods bearing such trademark. Goods are in the same class whenever the use of a given trademark or symbol on both would enable an unscrupulous dealer readily to palm off on the unsuspecting purchaser the goods of the infringer as the goods made by the owner of the trademark, or with his authority and consent." This case is directly in point.

Coffee and cocoa are used to a large extent for the same purposes. In the language of the case just cited, "they are generally handled by the same class of dealers, and are purchased by the same class of customers." Anyone seeing on a package of appellee's coffee the mark used so long and so extensively by appellant would naturally draw the inference, as was done in the case just quoted, that coffee "bearing the complainant's [appellant's] trademark was either manufactured by it, or by someone having its authority and consent; and that it vouched for the superiority and high character of the goods bearing such trademark." It is not a debatable question that coffee and cocoa both

belong to the same class of goods that may be described generally as household beverages. The injury which appellant would sustain by granting registration to appellee consists chiefly in the possibility of appellee's using the mark on an inferior quality of coffee, and, thereby, by association in the mind of the public, injure the standing of appellant's goods. The public are entitled to protection against such a result.

The court in this case, as in many trademark cases upon which we are called to pass, is forced to the conclusion that appellee has some sinister motive in seeking to register this mark. If not, it is strange that out of all the hundreds of thousands of designs that are available for his use as a trademark on his goods, he accidentally should have selected the same mark that appellant has used so long and so extensively on a line of the same general class of goods. We are not the first to draw this inference. In a very early decision (*Carroll* v. *Ertheiler,* 1 Fed. 688), where it was held that "Lone Jack," a trademark for smoking tobacco, could not be used by defendant on cigarettes, the court, speaking of the motive that permeated such an attempt, said: "If the public and the trade do not suppose the defendant's cigarettes to be made of the plaintiff's tobacco (and the defendant so understands), why does he adopt the designation by which this tobacco is familiarly known, and persist in using it?" We are forced to the same inquiry in this csae.

The decision of the Commissioner is reversed, and the clerk is directed to certify these proceedings as by law required.

*Reversed.*