HELMET CO. v. WM. WRIGLEY, Jr., CO.

(Circuit Court of Appeals, Sixth Circuit. August 1, 1917.)

No. 2960.

1. TRADE-MARKS AND TRADE-NAMES �köm92—SUIT FOR UNFAIR COMPETITION—SUFFICIENCY OF BILL.

The allegations of a bill considered, and *held* sufficient to sustain a decree granting an injunction against unfair competition in trade.

2. EQUITY ⊙km153—PLEADING—SUFFICIENCY OF BILL.

Allegations in a bill, although made on information and belief, may rightfully be considered in determining the sufficiency of the bill, where the existence of such facts is also distinctly alleged, and especially where they are peculiarly within the knowledge of defendant, and the allegations have been voluntarily answered.

3. TRADE-MARKS AND TRADE-NAMES ⊙km93(3)—UNFAIR COMPETITION—IMITATION OF PACKAGES.

Evidence *held* sufficient to sustain a decree granting an injunction against unfair competition by a manufacturer of chewing gum, especially on a comparison of the packages of the respective parties which show a marked similarity in the collocation of colors calculated to deceive ordinary purchasers.

4. TRADE-MARKS AND TRADE-NAMES ⊙km69—UNFAIR COMPETITION—FRAUDULENT INTENT.

A manufacturer is chargeable with knowledge of the inevitable consequences of imitating the dress of an older and competing product and is open to the inferences that it intends its product to be confused with that of its competitor.

Appeal from the District Court of the United States for the Western Division of the Southern District of Ohio; Howard C. Hollister, Judge.

Suit in equity by the Wm. Wrigley, Jr., Company against the Helmet Company. Decree for complainant, and defendant appeals. Affirmed.

Gilbert Bettman, of Cincinnati, Ohio, for appellant.
James R. Offield, of Chicago, Ill., for appellee.

Before WARRINGTON, MACK, and DENISON, Circuit Judges.

WARRINGTON, Circuit Judge. The parties to this appeal are each engaged in the manufacture and sale of chewing gum. In a suit for unfair competition, and on final hearing, the Wrigley Company was granted a decree enjoining the Helmet Company from selling or marketing chewing gum "in cartons, packages or wrappers in size, form, color, or in arrangement of printing or device, in color, language or symbols, simulating" complainant's product, as identified in its bill, and particularly from selling chewing gum "in wrappers or packages containing or employing printed matter or devices in color, language, and form similar to" three certain brands of the Helmet Company, to wit, "I.X.L. Spearmint," "Helmet Spearmint Product," and "Red, White and Green Label Spearmint Product." The Helmet Company appeals.

The decree ought to be affirmed unless some technical rather than meritorious objections urged against the form of the bill must be sustained.

[1] 1. Objection is made that the bill is lacking in positive and specific averment of facts sufficient to constitute unfair competition. The portions of the bill so complained of are found in the seventh and eighth paragraphs. In the closing part of the seventh paragraph the bill states:

"* * * Your orator further averring upon information and belief that a certain number of dealers in chewing gum, both the wholesale jobber, the retail dealer and the street fakir, can be found who have purchased the said packages of chewing gum from the defendant for the purpose of palming off the defendant's goods upon the public as the goods of your orator, and that this defendant has found, as a matter of fact, that the purchasing public makes no distinguishment between the packages of your orator and the Spearmint packages of this defendant, and that the Spearmint product of this defendant can be palmed off on the public and trade generally as the goods and product of your orator."

The eighth paragraph is as follows:

"That your orator avers, upon information and belief, that the said defendant is preparing to rush and flood the trade with vast quantities of chewing gum having the exact trade-dress of your orator, and that unless the honorable court shall grant an immediate injunction or restraining order preventing the sale or delivery of said packages that said defendant will at once utilize such delay and put upon the market his fraudulent imitation of your orator's trade-dress, as above set forth. to the great and irreparable damage of your orator, your orator averring that said chewing gum product known as 'Helmet Spearmint' and as made by the defendant, is of an inferior grade or quality to the product of your orator, is not of the same flavor as your orator's product, and is calculated and intended to and does, as a matter of fact, greatly injure the high reputation, character, and quality of your orator's goods."

It is necessary to read the whole of the seventh paragraph in order rightly to understand the portion above quoted. It is there in substance alleged that after complainant began an extensive advertising campaign for its Spearmint chewing gum product in 1906 the defendant began its chewing gum business and continued by progressive steps to dress its goods in such a way as ultimately to place upon the market the goods complained of in the suit and covered by the decree in question. All this is set out by positive averment. Thus the portion immediately preceding the part of the seventh paragraph above quoted reads:

"And your orator avers that this defendant has simulated style of lettering, shape of package, peculiar markings, form of wrapper and general color scheme. thereby producing and giving to its style of package, carton, and wrappers, the peculiar visual appearance that was adopted by your orator and your orator's predecessors in the year 1894 and through long years of usage has become the predominating means for distinguishing your orator's well-known Spearmint product from other gum products upon the market. * * *"

What is contained in the last three lines of the same paragraph (above quoted) is in effect stating the inevitable consequence of what is previously and positively alleged in the paragraph; that is to say, that

defendant's Spearmint product "can be palmed off· on the public and trade generally as the goods and product of your orator"; and it is not at all certain that the pleader did not through the use of the words "as a matter of fact" intend to make the last averment positively. If this were not so, when the seventh and eighth paragraphs are read together, and indeed the whole bill should be considered in a unitary way, it is obvious that the latter portion of the eighth paragraph is positively averred; thus, after alleging that defendant's product is of an inferior grade, it is stated, "and is calculated and intended to and does, as a matter of fact, greatly injure the high reputation, character and quality of your orator's goods." And these averments alone, as matter of pleading, furnish sufficient foundation for the decree.

[2] It is a mistake, moreover, to suppose that the allegations founded on information and belief cannot rightfully be considered on final hearing. The criticism made of the first part of the eighth paragraph is that an immediate restraining order was alleged to be necessary. It is enough to say of this that no steps were taken to obtain such an order, and that no such order was issued. It is to be observed of the form of such allegations as complainant made upon information and belief that they distinctly allege existence of the facts set out, though upon information and belief. This does not differ from the commonly recognized form that plaintiff "has been informed and believes, and therefore avers." Murray Co. v. Continental Gin Co. (C. C.) 126 Fed. 533, 534, and citations, by Judge Bradford; Wyckoff v. Wagner Typewriter Co. (C. C.) 88 Fed. 515, 517, by Circuit Judge Lacombe; Elliott & Hatch Book-Typewriter Co. v. Fisher Typewriter Co. (C. C.) 109 Fed. 330, 331; Boyd v. Thayer, 143 U. S. 135, 146, 181, 12 Sup. Ct. 375, 36 L. Ed. 103; Story, Eq. Pl. (10th Ed.) § 241, p. 236, note; Rush, Eq. Pl. Pr. (2d Ed.) § 63; 1 Whitehouse, Eq. Pr. § 105. And in Leavenworth v. Pepper (C. C.) 32 Fed. 718, 719, when passing upon a question whether defendants should be called on to answer a bill involving allegations of fraud based only on information and belief, Judge Thayer said:

"I think that position is untenable. If the court was asked to grant any interlocutory orders, such as to issue an injunction against making sales of any of the property pending suit, or if it was asked to appoint a receiver of the property pending the litigation, the court would look at the character of the averments, and finding that they were only made upon information and belief, it would probably refuse any such interlocutory orders; but the fact that these averments are made upon information and belief is no reason, in my judgment, why the defendants should not answer the bill."

We do not overlook decisions like Gaines & Co. v. Sroufe (C. C.) 117 Fed. 965, where objection was seasonably taken to allegations made on information and belief in respect of matters obviously within the knowledge of the pleader; but decisions of that character are hardly applicable to allegations concerning the effect of an alleged infringer's own acts and their tendency to deceive the public. Further, in view of the knowledge to be imputed to the claimed infringer, his voluntary answer to the pleading ought to operate as a waiver of such questions of definiteness in averment. Here the defendant filed an elaborate

answer, seemingly meeting every averment of the bill, without questioning its sufficiency. It was not until the case was brought to final trial that the bill was challenged either as to form or certainty of averment. Counsel then presented objections similar to those urged here, but they do not appear to have been distinctly passed upon. We have assumed that counsel were entitled to present the same objections in this court; but while complainant might seasonably have been required to make positive and specific averments as to some facts which would seem to have been within its knowledge, still no present advantage can be taken of this, since we think the bill as an entirety in substance states a case of unfair competition.

[**3**] 2. It is objected that there is no evidence to support the bill. The issue of fact seems to have been, whether defendant's trade-dress is a substantial imitation of plaintiff's. After the suit was brought and before answer was filed, on motion of complainant, an order was made in pursuance of equity rule 58 (198 Fed. xxxiv, 115 C. C. A. xxxiv) requiring defendant by its president to answer certain interrogatories. Defendant was then asked to state, among other things, when it first placed on the market and how long it continued on the market Spearmint products. The president of defendant answered the interrogatories by stating that it commenced to market its "I.X.L." Spearmint brand February 5, 1909, and continued to market the same "intermittently since" that date; that it commenced to market its "Helmet Spearmint Product" August 30, 1913, and had "continued intermittently to market" the same since that date; that it commenced to market its brand "Red, White and Green Label Spearmint Product" January 5, 1910, and had "continued intermittently to market" the same since that date. Further, defendant was asked whether it had "manufactured and sold Spearmint products in labels and cartons as identified by the four (three) exhibits in the preceding interrogatories, within the Southern district of Ohio, Western Division, prior to June 1, 1914"; and it was further asked whether it had "sold its various Spearmint products in labels and cartons, as identified in the preceding interrogatories, in the states of the United States other than the state of Ohio." The answer to these last two interrogatories was in each instance in the affirmative. These answers were all duly verified, and, together with the interrogatories, were received in evidence at the trial. The trial for the most part was conducted in an informal way, and yet so as to bring out the essential facts. This was done in a measure through undisputed statements of counsel and through exhibits showing the brands of chewing gum of the respective parties so far as necessary to a solution of the case, and showing particularly the cartons, packages, wrappers, and their distinctive forms, colors, and dress, respectively; these were presented to the court below and have been brought here. By stipulation, a pamphlet called "Catalogue of Helmet Brands of Gum" and a folder called "Helmet Company's Agents Sheet" were introduced.

After the court held that a prima facie case had been made, counsel for defendant stated:

"Well, we will put in evidence in regard to this word 'intermittently.' Of course, with regard to the question of the trade-dress, there is no dispute in the case, and whether or not the trade-dress is an imitation, in the opinion of this court, of the complainant's is something that you cannot introduce proof in regard to."

The president of the defendant was called to explain the word "intermittently" as it was used in his answers to the interrogatories before mentioned. He said:

"By 'intermittently' I mean that some days we would get orders and other days we would not; probably a lapse of a day or two."

The record shows that the trial judge examined a number of packages of chewing gum, presumably the packages appearing here as exhibits, one of which is marked "Complainant's Exhibit, Complainant's package," and the other four including the three brands of defendant above specifically mentioned and another brand of defendant marked as "Complainant's Exhibit, Defendant's Mountain Spearmint Product"; and it may be said in passing that as to this latter package no relief was granted. The court asked complainant's counsel how long the Wrigley package had been on the market, to which answer was made without objection:

"Twenty-two years, and the counterbands have been substantially the same as they are from the beginning, but that is the one they are advertising."

We do not discover that this was contradicted, and, on the contrary, it seems to have been an accepted fact below, if indeed it is not in effect conceded in the answer, that the business of the Wrigley Company and its predecessors began long before defendant commenced the manufacture and sale of chewing gum. The trial judge rendered no formal opinion, yet near the close of the hearing he stated, "I think it is a case of bad faith," and directed a decree except as to the Mountain brand.

The most convincing evidence to be found in the record in support of the charge of unfair competition appears in the trade-dress employed by the respective parties, excluding of course the Mountain brand. The packages of both parties, consisting of counterbands and individual pieces of chewing gum, are all substantially of the same size. The groundwork of these counterbands is white, and all have a green bar, appearing on both sides, with the name Spearmint displayed thereon in white letters, but the bar of complainant's counterband has a rude spearhead at one end. At one end of complainant's counterband is a sprig of spearmint in green, at the other end are the words, "The Flavor Lasts," in green letters disposed above and below the point of the spear, and the same figure and words are displayed in the same way on the opposite side. At each end of two of the defendant's counterbands is a green shield, one bearing the letters "I.X.L." in white, and the other "Lasting Flavor" in white, and the same design and letters appear at the ends of the opposite sides. The remaining counterband of defendant has at one end a shield outlined by double green lines with white center and bearing the letters "I.X.L." with some flourishes in green, the other end showing a helmet

in green, with the words "Helmet Gum" in green letters immediately above the helmet, and the same designs appear at the ends of the opposite side. The names "Wrigley" and "Pepsin Gum" appear in red letters, the one above and the other below the green bar, on both sides of complainant's counterband; while the names "Pepsin" and "Chewing Gum" appear in green letters, the one above and the other below the green bar, on both sides of one of defendant's counterbands. The names "Pepsin" and "Chewing Gum" in red letters are similarly arranged on another of defendant's counterbands, and the names "Helmet" and "Chewing Gum" in red letters appear in the same positions on the remaining counterband of defendant. One edge of complainant's counterband shows the following: A green bar with a spearhead bearing the words "The Flavor Lasts" in white letters, and immediately under the bar the name "Wm. Wrigley, Jr., Co.," with the names of the cities Chicago and New York at one end of the name of the company, and Toronto and London, England, at the other end, and the opposite edge is the same except that the words borne on the green bar are "Perfumes The Breath" in white letters. On one edge of defendant's counterbands these words appear in green letters and figures, "Guaranteed" and beneath this word, "Under the Pure Food and Drugs Act, June 30, 1906, Serial No. 18035;" on the opposite edge, "A Pleasant Chewing Gum containing Pepsin and other pure food ingredients;" underneath these words are "Lasting Flavor Good For Digestion." On another of defendant's counterbands the same words appear on one edge except that "Guaranteed" is in red letters, and on the opposite edge the same words appear except that the first sentence is in red letters, and the others in green. On one edge of defendant's remaining counterband are the words in green letters, "Guaranteed by The Helmet Co., Cincinnati, Under the Food and Drugs Act, June 30, 1906," and on the opposite edge the word "Spearmint" appears in green letters. Above the letters on each of the edges last mentioned are two heavy dotted parallel lines in red. Complainant's and defendant's packages alike contain five pieces or bars of chewing gum, and are completely inclosed in pink paper, except that the pieces of chewing gum are not so inclosed at the ends of one of defendant's packages.

While there are different features of these packages, both in words and colors, yet there is a most striking similarity in their general appearance. Complainant's product, it is true, can be distinguished from defendant's products when the packages are examined together for purposes of comparison; this can be done too when they are examined separately by one who is familiar with the two sets of packages, since he can do so through the presence or absence alone of Wrigley's name; but the identity is so marked that the average user desiring the product of either producer would in all likelihood be misled into buying the product of the other. The likelihood of confounding defendant's brands with complainant's brand would naturally occur in respect of an inexpensive article such as chewing gum. Any tendency to confuse users ought to suggest to manufacturers and dealers avoidance of similarity, rather than its cultivation. The degree

of resemblance found here can receive but one interpretation; it required ingenuity and study to bring it about; it is calculated to confuse and deceive. One of the controlling reasons for this is to be found in the skilful association of colors employed by defendant on its counterbands and on the wrappers of the individual pieces of chewing gum, and particularly (except as to one) the use made of the pink. The only answer that the president of defendant company could give to the question why it was necessary to "adopt a pink wrapper for each individual stick" was:

"Because pink poster paper is the cheapest paper for printing. Some of the high-price goods have white and some pink, but pink is the cheapest paper."

In an opinion rendered in Wm. Wrigley, Jr., Co. v. Colker, 245 Fed. 907, as appears by an exhibit here, Judge Cochran said:

"The defendant has the right to use spearmint to flavor his gum, and to sell it. But why not wrap it up in a blue package? I have an idea that if you would put it up in a blue package, the complainant would not complain. Why does he select pink, when he has got all the other colors of the rainbow to make a selection from—blue and violet and yellow and green? But he takes the complainant's color. And so as to these other markings. Wrigley has his lettered in red, and so is Colker's lettered in red. Other markings are in green on Wrigley's product, and so is Colker's in green; and it is that way all around, it is in the same colors exactly. There is no other conclusion that one can come to, than that he adopted that dress in order to get Wrigley's business."

As Judge Lacombe said in Lalance & Grosjean Mfg. Co. v. National Enameling & Stamping Co. (C. C.) 109 Fed. 317, 318:

"It is no doubt true that no one can have a trademark monopoly in color of paper, or in shape of label, or in color of ink, or in one or another detail; but a general collocation of such details will be protected."

Defendant admits extensive marketing of its product under the brands in question. No necessity is shown for dressing its product so as to confuse it with that of complainant. True, it is said that the predominating color, pink, is cheaper; but this is simply illustrative of defendant's apparent indifference to the rights of the using public, not to speak of the rights of complainant. It is well settled that dealers are not so much to be considered as are the ordinary users; the former will of course know the manufacturers from whom their purchases are made, but the latter are open to deception whether practiced by the manufacturer or the dealer; and hence the effect of producing and dressing goods that are calculated to deceive is at once a temptation to unscrupulous dealers and an imposition upon unwary users. Samson Cordage Works v. Puritan Cordage Mills, 211 Fed. 603, 610, 128 C. C. A. 203, L. R. A. 1915F, 1107 (C. C. A. 6); Coca-Cola Co. v. Gay-Ola Co., 200 Fed. 720, 722, 723, 119 C. C. A. 164, and citations (C. C. A. 6); L. E. Waterman Co. v. Standard Drug Co., 202 Fed. 167, 171, 120 C. C. A. 455, and citations (C. C. A. 6); N. K. Fairbank Co. v. R. W. Bell Mfg. Co., 77 Fed. 869, 875, 23 C. C. A. 554 (C. C. A. 2); Wotherspoon v. Currie, Law Rep. 5 E. & I. 508, 517; Lever v. Goodwin, 36 Ch. D. 1, 2, 3, 7; National

Biscuit Co. v. Baker (C. C.) 95 Fed. 135; R. Heinisch's Son's Co. v. Boker (C. C.) 86 Fed. 765, 768; Cauffman v. Schuler (C. C.) 123 Fed. 205, 206.

[4] It is idle to suppose that defendant's officers cannot discern the injurious effect of the manner in which they suffer the company's brands to be dressed and put upon the market. The defendant is therefore chargeable with knowledge of the inevitable consequences of such conduct, and so is open to the inference that it intends its products to be confused with and mistaken for complainant's product. Elgin Nat. Watch Co. v. Ill. Watch Co., 179 U. S. 665, 674, 21 Sup. Ct. 270, 45 L. Ed. 365; Samson Cordage Works v. Puritan Cordage Mills, supra, 211 Fed. 608 (C. C. A. 6); Fuller v. Huff, 104 Fed. 141, 145, 43 C. C. A. 453, 51 L. R. A. 332 (C. C. A. 2); Collinsplatt v. Finlayson (C. C.) 88 Fed. 693; Meccano v. Wagner (D. C.) 234 Fed. 912, 918; Wm. Wrigley, Jr., Co. v. L. P. Larson, Jr., Co. (C. C.) 195 Fed. 568, 570; Von Mumm v. Frash (C. C.) 56 Fed. 830, 837; Braham v. Beachim, 7 Ch. D. 848, 856; Wirtz v. Eagle Bottling Co., 50 N. J. Eq. 164, 168, 24 Atl. 658; Northwestern Knitting Co. v. Garon, 112 Minn. 321, 326, 128 N. W. 288.

The decree must be affirmed.