### EDGAR–MORGAN CO. v. ALFOCORN MILLING CO. et al.

(District Court, E. D. Missouri, E. D. January 20, 1921.)

No. 5124.

1. **Trade-marks and trade-names ☞59(5)—"Happy Hen Feed" held not anticipated.**
   The trade-mark "Happy Hen Feed" was not anticipated by a trade-mark "Happy Child" applied to cakes and cookies intended for human consumption, or by the word "happy" applied objectively and not subjectively in a large class of trade-marks, such as "Happy Vale" for canned goods.

2. **Trade-marks and trade-names ☞21—Right at common law arises from priority of appropriation.**
   The right to a trade-mark in the absence of registration in the Patent Office arises at common law from priority of appropriation.

3. **Trade-marks and trade-names ☞61—Use for hen feed gives protection against use for mule feed.**
   The use of the word "happy" in a trade-mark for hen feed in connection with a picture of a hen apparently displaying happiness gives an exclusive right to the use of that mark in connection with prepared feeds for domestic animals, including horses and mules.

4. **Evidence ☞13—Courts judicially notice the habits of domestic animals.**
   Courts may so far judicially notice the tastes and habits of well-known domestic animals such as hens and mules so as to know from the formulæ of prepared foods in evidence that the hen will eat the mule feed and the mule will eat the hen feed.

In Equity. Suit by the Edgar-Morgan Company against the Alfocorn Milling Company and others for infringement of a common-law trade-mark. Decree for plaintiff.

Arthur E. Wallace, of Chicago, Ill., and Hezekiah Sanders, of St. Louis, Mo., for plaintiff.

Cobbs & Logan and Howard G. Cook, all of St. Louis, Mo., for defendants.

FARIS, District Judge. This is an action for injunction and for profits for the alleged infringement of plaintiff's common-law trademark. The parties are each engaged in the identical business of

manufacturing and selling what are commonly called mixed feeds, or commercial feeds, for domestic animals.

Plaintiff began making and selling a feed for hens and other domestic fowls in 1915, which it called "Happy Hen" Scratch Feed. In August, 1918, it began to make and market "Happy Hog" Feed, "Happy Cow" Feed and "Happy Chick" Feed. Plaintiff advertised its Happy Hen Feed very extensively in the South in 1916, 1917, and 1918. It sold annually in each of these years from 5,000 to 7,000 tons of its Happy Hen Feed.

Plaintiff put this Happy Hen Feed on the market in jute bags on which, below the legend "Happy Hen," appeared the picture of a hen scratching dollars out of the jute background. This hen, while not seemingly dominated by superabundant bliss, yet appeared from her counterfeit presentment to be enjoying a life of supreme contentment, unalloyed by carking care or remorse of conscience.

In compliance with the local laws of Florida plaintiff registered its "Happy Hen Scratch Feed" formula, brand, and trade-mark in that state in 1915. Cf. sections 12151–12161, R. S. Mo. 1919. In August, 1918, it likewise registered its formulæ, brands, and trade-marks for divers other of its "Happy" feeds, including Chick Feed, Cow Feed, and Hog Feed. Plaintiff did not begin making and selling any "Happy" brand of mule or horse feed till September, 1919, at which time it registered the formula, brand, or trade-mark for its "Happy Horse and Mule" Feed in divers states. These several registrations were had in some 18 states or more at approximately the several dates stated above.

Defendants began making and selling a similar, but much cheaper and inferior feed for horses and mules in April, 1918, which it called "Happy Mule Horse and Mule Feed." This feed they marketed in jute bags, similar in size, color, shape, and contents to those used by plaintiff. Defendants' product bore on this container the words "Happy Mule Horse and Mule Feed," with the net contents and the name of defendant corporation very legibly and prominently displayed thereon. The bag also bore printed thereon a picture of a mule, palpably enjoying the most hilarious happiness, if a wide-open mouth and upreared caudal appendage serve to depict such a status. Inferably the mule's exuberant felicity is attributable to the opinion entertained by the mule of the quality of defendant's feed.

Both plaintiff and defendant corporation are, as forecast, large manufacturers of mixed feeds for poultry and other domestic animals. Both of them put these feeds upon the market under various names and brands; the constant effort apparently being to devise some "catchy" name or phrase by which to designate these feeds and thus add to their sales. There is no doubt upon the record that plaintiff adopted and used the name "Happy Hen" to designate a brand of hen feed made and sold by it some three years before defendant corporation began to use the name "Happy Mule" to designate the horse and mule feed sold by it. In April, 1918, the time at which defendant corporation began using the designation Happy Mule as a name for its horse and mule feed, plaintiff was advertising, making, and selling but one

feed, namely, hen feed, in which it used the word "happy." Four months after this plaintiff began using the word "happy" in connection with cow feed and chick feed. Sixteen months later plaintiff first put out its "Happy Horse and Mule Feed." So that plaintiff is now making and selling a fairly complete line of goods of its Happy brand as feed for domestic animals.

Defendants offered divers registered trade-marks wherein the word "Happy" was used as anticipatory of plaintiff's claim. These included "Happy Child" (simply, without any picture of a child) for cakes and cookies, "Happy Vale" for canned goods, and others belonging in the class of that last above mentioned.

[1] I do not think that as a matter of law plaintiff's use and adoption of the word "happy," in combination with the name of the particular animal for which the feed was intended, as a designation of its feeds for domestic animals, is so far anticipated by the use of the word "happy" in combination with the word "child" to designate cakes intended for human consumption as to preclude plaintiff's adoption for the purpose and in the mode stated of the combination here in issue. With the other examples from the analogous prior art there is no manner of difficulty. Each of them may be said to be objective illustrations of the use of the word "happy" as contradistinguished from the subjective phase connoted and present in the instant case. The former class, is exemplified by the use of the words "Happy Vale" on canned fruit.

Of course, the phrase "Happy Child" when applied to cakes, or cookies, connotes the idea of a child made happy by the excellence of the goods sold under the name. So far the cases are similar. But there exist two points of difference: One of these is that the food is intended in the one case for human beings, and in the other for domestic animals. The other is that in addition to the words "Happy Hen" plaintiff has used as its mark the picture of a hen, in the seeming enjoyment of apparent bliss, thus conveying the notion of happiness by both the picture and by the phrase or words used. This notion to the very fullest extent defendant has taken over and adopted.

[2, 3] The right to a trade-mark, absent, as here, registration in the Patent Office, arises at common law from priority of appropriation. Trade-Mark Cases, 100 U. S. loc. cit. 94, 25 L. Ed. 550. Such priority upon the undisputed facts here belongs to plaintiff, so far as the use of it to designate feed for poultry is concerned. Defendants insist, however, that plaintiff's priority of use attaches under the facts to the use of the phrase and picture only for the purpose of designating poultry feed, and therefore defendants are, under the law, invading no right of plaintiff in adopting and using the idea to designate horse feed and mule feed.

[4] I do not think the law applicatory to the facts warrants so narrow and restricted a view as defendants here urge upon this point. Plaintiff and the corporate defendant are engaged in precisely the same business and are competitors for trade in the same territory. Some confusion has already arisen. The proof shows that domestic fowls eat the mule feed. Absent such proof, the formulæ in evidence dis-

close that, present opportunity, the hen will eat the mule feed and the mule will eat the hen feed. Courts may, I opine, so far judicially notice the tastes and habits of well-known domestic animals such as those here involved.

The ruled cases, moreover, as I am constrained to construe them, seem to be opposed to the contention of defendants. Carroll v. Ertheiler [C. C.] 1 Fed. 688; American Tobacco Co. v. Polacsek [C. C.] 170 Fed. 117; Florence Mfg. Co. v. Dowd, 178 Fed. 73, 101 C. C. A. 565; Van Zile v. Norub Mfg. Co. [D. C.] 228 Fed. 829; Aunt Jemima Mills Co. v. Rigney & Co., 247 Fed. 410, 159 C. C. A. 461; Helmet Co. v. Wm. Wrigley Co., 245 Fed. 830, 158 C. C. A. 164; Hanover Milling Co. v. Metcalf, 240 U. S. 403, 36 Sup. Ct. 357, 60 L. Ed. 713.

The case of Florence Mfg. Co. v. Dowd & Co., supra, is upon the facts on all fours with the case at bar upon this mooted point. The facts of the latter case and the rule of law which governs are thus stated by the court:

"But it is urged that, as the complainant did not manufacture toothbrushes at the time the defendants entered the field, it cannot be injured by the sale of toothbrushes by others. We do not think the conclusion follows. The complainant had acquired a reputation as the manufacturer of high-grade toilet brushes; it certainly had a right to include toothbrushes at any time, and, when it did so, purchasers who were acquainted with the high character of its goods would quite likely purchase its toothbrushes, deeming its previous reputation a guaranty of excellence. In other words, the complainant did not abandon the right to make 'Keepclean' toothbrushes because it did not at the outset make such brushes, as well as other varieties of toilet brushes.

"Test it by an illustration: Suppose a hatter had for years engaged in making silk hats and 'Derbys,' and as such had acquired an enviable reputation, but had never made straw hats; could the proposition be successfully maintained that a rival could make straw hats and offer them to the public in circumstances which would lead them to believe they were procuring the product of an old established manufactory? The public is deceived by such conduct, the reputation of the established manufacturer is injured if the goods represented to be his are of inferior quality, and he is hindered in entering a field which he has a right to enter at any time he sees fit. These views are, we think, sustained by the following authorities: Collins Co. v. Ames Co. (C. C.) 18 Fed. 561; Holeproof Co. v. Wallach, 172 Fed. 859, 97 C. C. A. 263; Holeproof Co. v. Fitts (C. C.) 167 Fed. 378."

Florence Mfg. Co. v. Dowd & Co., 178 Fed. loc. cit. 75, 101 C. C. A. 567.

Other cases which I cite above affirm the doctrine announced in the quoted excerpt from the Dowd Case, supra. I am constrained to conclude, therefore: (a) That since plaintiff was first in point of time to use as its trade-mark the word "happy" in connection both with the name of a domestic animal for which the feed was designed and of a picture depicting such animal in a condition of seeming bliss, it is, as against defendant, entitled to use this brand or common-law trade-mark; and (b) that such prior use of this trade-mark to designate feed designed for one species of domestic animals confers on plaintiff as against defendants the legal right to extend the use of this trade-mark to feed designed for others of the genus domestic animals.

The finding will therefore be in favor of the plaintiff and against

the defendants on the issues joined, and a decree perpetually enjoining defendants as prayed in the petition may be submitted.

That matter of damages and an accounting therefor will be referred to a master to be hereafter appointed and named in the decree.