## VICK CHEMICAL CO. v. VICK MEDICINE CO.

(District Court, S. D. Georgia, Albany Division July 21, 1925.)

No. 93.

1. **Trade-marks and trade-names and unfair competition ⬅45—"Proper name" in trade has primary and secondary meaning.**

A proper name in trade has a primary and secondary meaning, the primary meaning being that the goods came from a person of that name, and the secondary that they came from a particular person of that name, and the registration of a proper name as a trade-mark, under Act Feb. 20, 1905, § 5 (Comp. St. § 9490), furnishes a presumption that such name has acquired the secondary meaning.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Name.]

2. **Trade-marks and trade-names and unfair competition ⬅73(1)—Second user cannot use proper name in way to deceive purchasers.**

When a proper name has acquired a secondary meaning in trade, as that of a particular person, another of the same name cannot so use the name that the public will be de-

ceived into believing that the goods come from the first user, but must distinguish his goods from those covered by the trade-mark.

**3. Trade-marks and trade-names and unfair competition ☞58—Colorable imitation may be "infringement."**

To constitute "infringement" of a trade-mark, it is not necessary that the identical mark be used, but any colorable imitation is sufficient.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Infringement.]

**4. Trade-marks and trade-names and unfair competition ☞68—Underlying principle of law of unfair competition is to prevent substitution by deception.**

The underlying principle of the law of unfair competition is that "nobody has any right to represent his goods as the goods of somebody else."

**5. Trade-marks and trade-names and unfair competition ☞99 — Unfair competition always question of fact.**

Unfair competition is always a question of fact in each case.

**6. Trade-marks and trade-names and unfair competition ☞64 — Use of same name on medicinal preparations held infringement of trade-mark.**

The name "Vick's" was adopted and registered by complainant, Vick Chemical Company, as a trade-mark for medicinal preparations, and through their sale became quite well known as designating its remedies. Later defendant, Vick Medicine Company, was organized by two persons, Vick and West. Vick had no knowledge of pharmacy, but West had, and was the originator of the remedies which the company made and marketed under the name "Vick's Grippe Remedy" and others in which the name "Vick's" was used. Its labels were not readily distinguishable by the uncritical from those of complainant. *Held*, that such use of the name was calculated, and probably intended, to deceive purchasers, and constituted an infringement of complainant's trade-mark.

**7. Trade-marks and trade-names and unfair competition ☞93(3)—Affidavits that purchasers have not been misled held of little weight in view of facts.**

Printed affidavits submitted by the defendant in a suit for infringement of trade-mark and unfair competition, in which affiants state that they have not been deceived by defendant's advertising or labels into thinking that its product was that of complainant, are of little weight where the probability of such deception of ordinary purchasers is apparent.

**8. Trade-marks and trade-names and unfair competition ☞70(1)—Duty of later competitor to clearly distinguish his goods.**

The field is so large from which a manufacturer may select a name or mark for his product that his selection of one which so nearly approaches that of a successful competitor that the public may fail to distinguish between them is viewed with suspicion by the courts.

**9. Trade-marks and trade-names and unfair competition ☞61, 68 — Confusion of origin and not of goods controls on question of infringements and unfair competition.**

It is confusion of origin and not of goods which controls on the question of infringement or unfair competition, and if there is such relationship or analogy between the goods of complainant and defendant that ordinary retail purchasers are likely to be deceived as to their origin there is infringement and unfair competition.

In Equity. Suit by the Vick Chemical Company against the Vick Medicine Company. Decree for complainant.

Pottle & Hofmayer, of Albany, Ga., Harold Hirsch, of Atlanta, Ga., Allen M. Reed and Edward S. Rogers, both of Chicago, Ill., and James F. Hoge, of Greensboro, N. C., for complainant.

Lippitt & Burt and Pope & Bennett, all of Albany, Ga., and Alston, Alston, Foster & Moise and E. W. Moise, all of Atlanta, Ga., for defendant.

BARRETT, District Judge. This suit arises under the trade-mark laws of the United States. It is further contended that, irrespective of the registration of the trade-mark, complainant is entitled to the relief sought on the ground of unfair competition. The same principles control, for "the common law of trade-marks is but a part of the broader law of unfair competition" (Hanover Milling Co. v. Metcalf, 240 U. S. 413, 36 S. Ct. 360, 60 L. Ed. 713) with this modification: "While in a case for unfair competition it may be necessary to show intent to deceive the public, in a case for violation of a properly registered trade-mark it is not necessary to show wrongful intent or facts justifying an inference of such intent." Thaddeus Davids Co. v. Davids, 233 U. S. 461, 462 (34 S. Ct. 648, 58 L. Ed. 1046, Ann. Cas. 1915B, 322). Inasmuch as it is clearly established that complainant was and is the owner of a trade-mark, "Vick's," under the act of Congress, no discussion of the general principles of unfair competition dissociated from trade-marks will be indulged.

There is a wealth of learning on the subject, which is intensely interesting and informative. No effort will be made to collate the authorities, because a few long-established principles control.

[1] 1. There is a distinction in trade between the primary and secondary meaning of a proper name. The primary meaning is simply that the goods come from *a* person of that name. The secondary meaning is that the goods come from *a particular* per-

son of that name. Herring, etc., Safe Co. v. Hall's Safe Co., 208 U. S. 554, 28 S. Ct. 350, 52 L. Ed. 616; Thaddeus Davids Co. v. Davids, 233 U. S. 461–470, 34 S. Ct. 648, 58 L. Ed. 1046, Ann. Cas. 1915B, 322; Waterman Co. v. Modern Pen Co., 235 U. S. 88, 35 S. Ct. 91, 59 L. Ed. 142.

2. The registration of a proper name as a trade-mark under the fourth proviso of section 5 of the Act of Congress of February 20, 1905 (chapter 592, 33 Stat. 724 [Comp. St. § 9490]), furnishes a presumption that such name has acquired such secondary meaning. Thaddeus Davids Co. v. Davids, 233 U. S. 461–470, 34 S. Ct. 648, 58 L. Ed. 1046, Ann. Cas. 1915B, 322.

[2] 3. When a proper name has acquired such secondary meaning another of the same name cannot so use the name as that the public will be deceived into believing that the goods come from the first user. McLean v. Fleming, 96 U. S. 245–251, 24 L. Ed. 828; Hanover Milling Co. v. Metcalf, 240 U. S. 403–412, 36 S. Ct. 357, 60 L. Ed. 713.

4. The newcomer is under the obligation of distinguishing his goods from the goods already covered by the trade-mark. Jacobs v. Beecham, 221 U. S. 263–271, 31 S. Ct. 555, 55 L. Ed. 729.

[3] 5. To constitute an infringement of a trade-mark, it is not necessary to use the identical mark, but any colorable imitation is sufficient. Thaddeus Davids Co. v. Davids, 233 U. S. 461–469, 34 S. Ct. 648, 58 L. Ed. 1046, Ann. Cas. 1915B, 322.

[4] 6. The fundamental principle is: "Nobody has any right to represent his goods as the goods of somebody else." Lord Halsbury in Reddaway v. Banham, [1896] A. C. 199, quoted in Charles Broadway Rouss, Inc., v. Winchester Co. (C. C. A.) 300 F. 706–715.

[5] 7. "The question whether or not one is selling or representing his goods as those of another is always a question of fact." Charles Broadway Rouss, Inc., v. Winchester Co., supra.

[6] "Vick's" is a trade-mark of complainant, and its efficacy is not dependent upon the form of the writing or printing. The application by the Vick Chemical Company for registration stated that applicant "has adopted for its use the trade-mark shown in the accompanying drawing for a medicinal salve for external use, liver pills, headache tablets, and a liniment for the treatment of spavin, ringbone, curb, sprains, swellings, and lameness in horses, and for man, rheumatism, neuralgia, burns, sore throat, soreness of the chest, bruises, and cuts, or lameness requiring a liniment of this kind, in class 6, Chemicals, Medicines, and Pharmaceutical Preparations."

Various medicinal preparations were put upon the market under the name "Vick's," which were generally known as "Vick's Remedies." The "V" was large and prominent in advertising "Vick's Remedies." In the labels was a red isosceles triangle, on the respective sides of which were the words "Vick" "Chemical" "Company." The salve was described indifferently as "Vick's" or "Vick's Salve." "Vick's," when applied to any of such remedies, undoubtedly carried a meaning as to the source of the goods, and from the popularity of at least one of "Vick's Remedies" it must be presumed that the reputation of the manufacturer was of the best.

W. P. Vick was, and had been for some years, an automobile tire salesman. He was well known and popular throughout extensive territory. W. L. West. who for some 18 years had been a licensed pharmacist, had put upon the market a grippe remedy called "West's Grippe Remedy." It did not succeed, and he abandoned pharmacy and became an automobile salesman. In some way Vick and West entered into an arrangement by which a corporation known as "Vick Medicine Company" was organized. Vick contributed at first a part, and then all, of his time to its promotion and operation; West contributed his formula for his grippe remedy, and some few thousands of dollars were contributed by others. The business prospered promptly and was pushed vigorously. The chief product was the grippe remedy, now come to be known as "Vick's Grippe Remedy," and two other products have been recently put on the market, known as "Vick's Medicated Skin and Scalp Soap" and "Vick's Kurl-No." With all of these were used in advertising and on the labels the large "V." Such "V" on the labels was red, and to the casual observer was similar to the red triangle used by complainant.

The labels of defendant and some of the advertisements carried the statement of manufacture and sale by the Vick Medicine Company, of Albany, Ga. This was not conspicuous, and did not serve to remove from the mind of the uncritical purchaser the impression, otherwise inevitable, that the article was manufactured and sold by complainant.

[7] There was submitted by defendant many affidavits in printed form that affiants had not, by advertisements, representations, or otherwise, been led into believing that "Vick's Grippe Remedy" was the same as "Vick's Salve," or that any of the products of

the Vick Medicine Company, of Albany, Ga., were the products of the Vick Chemical Company, of Greensboro, N. C. (The weight to be attached to such printed affidavits is discussed in Carroll v. Ertheiler [C. C.] 1 F. 688.) Surely in a number of cases dealers and customers have been deceived as to the source of the products sold by the Vick Medicine Company. Equally sure is such deception probable in each and every sale.

Briefly stated, the reason assigned for the use of Vick, rather than West, or some other name, in christening this new corporation, was to make full avail of the popularity of W. P. Vick, established as a seller of automobile tires. There is no suggestion as to why any one should credit a seller of tires with such pharmaceutical knowledge as to assure the effectiveness of any medicine bearing his name. There is no suggestion as to why his interest could not have been made known to his friends without using his name for the corporation and for the products. "Vick's Grippe Remedy" bears normally the interpretation that it is the product of Vick's brain and skill, not that Vick has bought it, or has an interest in a corporation which has bought it. Despite the vehemence of the protestations to the contrary, the conclusion of the court is that the moving cause for the adoption of Vick's name was to obtain the benefit of its widespread publicity, resulting from the money and effort of the Vick Chemical Company.

[8] Defendant claims the right to use his name, either as an individual or as a corporation, even though thereby some benefit may accrue from the publicity of such name, established by another, provided he use such words or devices as to make it manifest that his products are not the product of the prior user of the name, citing, among other authorities: Howe Scale Co. v. Wykoff, Seamans & Benedict, 198 U. S. 118, 25 S. Ct. 609, 49 L. Ed. 972; Donnell v. Herring-Hall-Marvin Safe Co., 208 U. S. 267, 28 S. Ct. 288, 52 L. Ed. 481; Thaddeus Davids Co. v. Davids Co., 233 U. S. 461, 34 S. Ct. 648, 58 L. Ed. 1046, Ann. Cas. 1915B, 322.

This is true; but, in measuring compliance with this requirement, the following from Florence Mfg. Co. v. J. C. Dowd Co., 178 F. 73, 75, 101 C. C. A. 565, 567, is pertinent: "It is so easy for the honest business man, who wishes to sell his goods upon their merits, to select from the entire material universe, which is before him, symbols, marks, and coverings which by no possibility can cause confusion between his goods and those of competitors, that the courts look with suspicion upon one who, in dressing his goods for the market, approaches so near to his successful rival that the public may fail to distinguish between them."

"Vick's" is so prominent in advertising and designating the products of the Vick Medicine Company, and the features that would to the critical observer serve to distinguish such products from those of the Vick Chemical Company are comparatively so nonevident, that the defendant has not complied with this requirement.

[9] Defendant insists that in no event is it guilty of the infringement charged, because its products are of wholly different descriptive properties from those dealt in by complainant. This dissimilarity might be true as to Vick's Kurl-No, but it is not as to the other products. But this is not the real issue. Such issue is well stated in the brief of counsel for complainant as follows: "If a sufficient relationship or analogy exists between the goods to which the marks are applied as to make it likely that an ordinary buyer at retail is likely to assume from the marks upon them that they have a common source, the defendant is guilty of infringement and unfair competition. It is confusion of origin, not confusion of goods, which controls." See International News Service v. Associated Press, 248 U. S. 215, at page 247, 39 S. Ct. 68, 75 (63 L. Ed. 211, 2 A. L. R. 293) : "The ordinary case is a representation by device, appearance, or other indirection that the defendant's goods come from the plaintiff." Also Church & Dwight Co. v. Russ (C. C.) 99 F. 276–280; Anheuser-Busch v. Budweiser Malt Products Corporation (C. C. A.) 295 F. 306–309; Oppenheim, Oberndorf & Co. v. President Suspender Co., 55 App. D. C. 147, 3 F.(2d) 88, 89.

All of the products of the Vick Medicine Company are so labeled and advertised as to violate the above stated principle. Injunction is sought, not against the use by an individual of his name in a normal and freely ingenuous way, which inadvertently infringes upon the right of another, but against a corporation's adopting its name, in my opinion, for the purpose of appropriating a part of the good will of complainant and signally failing to do sufficient to disprove or prevent the effectiveness of such apparent purpose. In my opinion, the use of "Vick's" by defendant on its products in the manner now done is an unlawful invasion of complainant's rights, and should be enjoined; and it will be so ordered.

Under the view I now entertain as to the

purpose in adopting the name "Vick" for the new corporation and for the products to be sold by it, I think that the use by defendant of "Vick," or "Vick's," descriptive of such products, whatever distinguishing statements or devices might be employed, should not be permitted. A decision of that at this time is unnecessary. This statement is made because of a request (not presenting an issue) that I should prescribe the conditions under which "Vick's" could be use by defendant.