### NATIONAL PICTURE THEATRES, Inc., v. FOUNDATION FILM CORPORATION.

(Circuit Court of Appeals, Second Circuit. April 14, 1920.)

No. 230.

1. **Appeal and error ☞954(3)—Discretion in denying preliminary injunction reviewable, where question is one of law.**

   Where granting or denial of a preliminary injunction is based on a finding on controverted facts, it is an extreme case which will justify interference with the discretion of the primary court; but where there is no fact in doubt, and the question is one of law only, the law not only guides, but coerces, discretion.

2. **Trade-marks and trade-names ☞70(3)—Imitation of name of successful play unfair competition.**

   When a play has attained such popularity that its name has plainly acquired a secondary signification, suggestive of that particular play, equity will, under the rules of unfair competition, prevent the use of the same name or any colorable imitation thereof as descriptive of another and competing production.

3. **Copyrights ☞36—Of book or play covers picture rights.**

   The owner of a copyright on a book or play owns the right to represent on a screen photographs telling the copyrighted story, and may assign such right.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4. Trade-marks and trade-names ⟨≈⟩95(1)—Grounds of injunction against unfair competition.**

To entitle a complainant to an injunction against unfair competition, he must have an actual property right to protect, there must be a real present or prospective competition, and the endeavor to get the same trade from the same people at the same time must on defendant's part be with wrongful intent to gain the advantage of that celebrity of which complainant is owner; but such intent may be inferred from the inevitable consequences of the act complained of.

**5. Trade-marks and trade-names ⟨≈⟩95(3)—Imitation of name of picture play enjoined as unfair competition.**

Complainant, as owner of motion picture rights in a play entitled "Blind Youth," which as a spoken play had attained wide popularity, toward the production of which complainant had expended money, *held* entitled to a preliminary injunction to restrain the production by defendant of a motion picture play under the name of "The Blindness of Youth," which was adapted from another play having a different name.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by the National Picture Theatres, Incorporated, against the Foundation Film Corporation. From an order denying a preliminary injunction, complainant appeals. Reversed.

Appeal from an order in equity denying motion for an injunction pendente lite, entered in the District Court for the Southern District of New York. Prior to June, 1919, one Tellegen and another, being the authors of a play or drama entitled "Blind Youth," were the owners of the copyright of said play and of all the dramatic and motion picture rights in and to the same. In December, 1919, plaintiff herein by divers mesne assignments became the owner of a motion picture play based upon said dramatic composition known as "Blind Youth." The work of photographing the situations of the photoplay "Blind Youth" was at once begun, but before it was ready for production defendant announced by advertisement its intention to produce, or permit others to produce, a picture play to be known as "The Blindness of Youth."

Defendant's production is said to be "adapted from the great French success 'The Torrent,'" and it is herein assumed that the subject-matter or incidents of "Blind Youth" and "The Blindness of Youth" are wholly dissimilar, further than that both deal with the misadventures and dangers of youthful inexperience of life. Jurisdiction herein rests on diversity of citizenship. The bill is one for unfair competition only, and prays for an injunction against the use by defendant of the name "The Blindness of Youth" as applied to "any motion picture play."

The spoken play "Blind Youth" is proven without contradiction to have attained wide popularity over considerable portions of the United States, largely on account of the reputation of one of the authors and the principal actor—Tellegen. It also appeared that on July 10, 1915, one Byers registered and claimed copyright upon a "certain dramatic composition entitled 'The Blindness of Youth.'" This is a wholly different composition from the play upon which defendant's motion picture production is based, and it is not asserted that Byers' copyrighted play influenced defendant's choice of title, nor is any reason assigned for using the alleged infringing name in place of "The Torrent," except that such change of title is common in trade circles. Plaintiff promptly moved for preliminary injunction, and appeals from the order denying the same.

---

⟨≈⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Konta, Kirchswey, France & Michael, of New York City (Royal W. France, of New York City, of counsel), for appellant.

House, Grossman & Vorhaus, of New York City (Nathan April, of New York City, of counsel), for appellee.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] The propriety of reviewing, and indeed our right to review, the order appealed from, is questioned because, in refusing relief, the court below exercised judicial discretion. Where decision is dependent on controverted facts, it is an extreme case that justifies departure from the rule "that the discretion of the primary court [is not] to be interfered with." Texas, etc., Co. v. Collier, 195 Fed. at page 66, 115 C. C. A. 83. But here no fact is in doubt; there is before us only a question of law, and law not only guides, but coerces, discretion.

We have held that "whenever it is manifest to the court that, upon the case made, an injunction will be granted at final hearing, * * * one should be awarded * * * preliminarily, in the absence of facts presenting special equitable considerations to induce the court, in the exercise of judicial discretion, to withhold it" (Allington, etc., Co. v. Booth, 78 Fed. at page 878, 24 C. C. A. 379); and Armat, etc., Co. v. Edison, etc., Co., 125 Fed. 939, 60 C. C. A. 380, well illustrates how the "contradictory character" of affidavits produces a situation wherein the appellate court will vacate preliminary injunction granted, or refuse one on appeal from a denial.

[2] The question at bar is whether when a play has attained such popularity that its name has plainly acquired a secondary signification (i. e. one suggestive of that particular play) equity will, under the rules of unfair competition, prevent the use of the same name, or any colorable imitation thereof, as descriptive of another and competing production. It is to be noted that plaintiff's asserted right does not rest on copyright, though derived from a copyright owner; therefore it may be admitted that a name as such is not protected by the Copyright Act (Glaser v. St. Elmo Co. [C. C.] 175 Fed. 276, and cases cited), nor by trade-mark registration (Atlas, etc., Co. v. Street, 204 Fed. 398, 122 C. C. A. 568, 47 L. R. A. [N. S.] 1002).

[3] Yet it remains true that the owners of copyright on a book or play own the right to represent on a screen photographs telling the copyrighted story (Kalem Co. v. Harper, 222 U. S. 55, 32 Sup. Ct. 20, 56 L. Ed. 92, Ann. Cas. 1913A, 1285); therefore the assignment to this plaintiff gave a lawful right, which by the investment of capital and labor has been made a business. Where unfair competition is charged "the rights of the parties are to be determined [by principles] similar to those which are well known to govern trade-marks, although the combination of elements is more complex than in devices which commonly go by that name" (per Holmes, J., New England, etc., Co. v. Marlborough, etc., Co., 168 Mass. 154, 46 N. E. 386, 60 Am. St. Rep. 377).

[4] To expand this thought: The plaintiff must have a right in being, an actual property, to protect (Manners v. Triangle, etc., Co., 247 Fed. 301, 159 C. C. A. 395); there must be a real present or prospective competition, that is, an endeavor to get the same trade from the same people at the same time;[1] and that endeavor must on the defendant's part be unfair, that is with a wrongful intent to "gain the advantages of that celebrity" (McLean v. Fleming, 96 U. S. at page 251 [24 L. Ed. 828]), of which plaintiff is the owner; but such intent, though it must be deemed to exist in fact, may be inferred from the inevitable consequences of the act complained of (Samson, etc., Works v. Puritan, etc., Mills, 211 Fed. at page 608, 128 C. C. A. 203, L. R. A. 1915F, 1107, and cases cited; Notaseme, etc., Co. v. Straus, 201 Fed. 99, 119 C. C. A. 134; Miller, etc., Co. v. Behrend, 242 Fed. at page 518, 155 C. C. A. 291.)

[5] All the requisite elements of recovery are here present; plaintiff has a veritable property or business; that the exhibitions of the parties compete, in that they appeal to the same people who at the same time in the same town incline to visit the "movies" is very plain; the necessary consequences of such a colorable imitation of plaintiff's name as is defendant's is deception of the public; and, finally, no equity is shown against plaintiff's prompt demand. Therefore as matter of law plaintiff was entitled to injunction.

The court below rightly gave no weight to the defense based on Byers' registration of a play, named as is defendant's. Whatever may be Byers' rights, unfair competition is a trespass, and no trespasser can justify by setting up the right of one to whom he is a legal stranger.

Order reversed, with costs, and cause remanded, with directions to grant relief.

---

[1] Thus there could be no competition between an "Ideal fountain pen" (Waterman v. Shipman, 130 N. Y. 301, 29 N. E. 111) and an "Ideal hair brush" (Hughes v. Smith Co., 209 Fed. 37, 126 C. C. A. 179); but it can and did arise between a "Keepclean toilet brush" and a "Sta-Kleen tooth brush" (Florence Co. v. Dowd, 178 Fed. 73, 101 C. C. A. 565).