## ALUMINUM COOKING UTENSIL CO. v. SARGOY BROS. & CO.

(District Court, E. D. New York. June 30, 1921.)

1. **Trade-marks and trade-names and unfair competition ⟂45—Trade-mark cannot be given validity by classification in Patent Office.**

Validity of a trade-mark cannot depend alone on classification or indexing by the Patent Office, and a valid trade-mark cannot be obtained by two different manufacturers for goods in the same general class, having the same descriptive properties and similar essential characteristics, so that the general public would be misled, though they are placed by the patent office in different classes.

2. **Trade-marks and trade-names and unfair competition ⟂71—Unfair competition by use of name on articles of similar general characteristics.**

The registration and use by complainant for years of the word "Wearever" as a trade-mark for aluminum articles, though stated to be particularly intended for use on cooking utensils, *held* to preclude the obtaining of a valid trade-mark in the word as applied to tin wash boilers, which are sold in the same stores and alongside of complainant's aluminum ware, and the use of such name by defendant stamped on the paper covering of its tin boilers, together with a picture resembling one used by complainant in its advertising, *held* to constitute unfair competition.

In Equity. Suit by the Aluminum Cooking Utensil Company against Sargoy Bros. & Co. Decree for complainant.

Kay, Totten & Brown, of Pittsburgh, Pa. (Robert D. Totten, of Pittsburgh, Pa., of counsel), for plaintiff.

Samuel D. Jones, of New York City (H. P. King, E. T. Fenwick, and C. R. Allen, all of New York City, of counsel), for defendants.

CHATFIELD, District Judge. The plaintiff brings this action for infringement of trade-mark and also upon a charge of unfair competition. Plaintiff is a corporation organized under the laws of Pennsylvania, and having its principal place of business in Pittsburgh in that state. It has for some 16 or 17 years placed upon the market aluminum dishes or vessels for use in household and kitchen work. It evidently has at all times had its attention fixed upon the idea of "cooking" utensils, for which the metallic material aluminum is particularly advantageous.

The corporate title of the company is the Aluminum Cooking Utensil Company. It has during these years sold extensively and advertised very widely at great expense its so-called "Wear-Ever" aluminum vessels and utensils. The result has been that the public has recognized, as a standard or staple article, aluminum vessels of the "Wear-Ever" grade or brand.

Such trade reputation is a valuable asset which will be protected under the doctrine of unfair competition and also under the trade-mark statute, if the particular design, mark, or device has been validly filed.

In 1903, the plaintiff attempted to file the trade-mark "Wearever," and stated that the class of merchandise upon which it intended to place its trade-mark was aluminium and aluminium alloys. With the same limitation in idea which was present when the name of the company was chosen, it was further stated that the trade-mark is particularly intended for use upon cooking utensils made of aluminium and aluminium alloys, with utter disregard of the apparent fact that a pan or dish might be used to heat water for shaving or washing, and thus not be brought within the class of cooking utensils, except in so far as the water might be cooked or heated in the same way as if used in the preparation of food.

The testimony in this case shows that in the Patent Office cooking utensils are considered and classified as a different line of commercial manufacture from articles for laundry purposes or articles for household work, like cleaning or scrubbing, though a pail or dish for the mere containing of hot water, and in which water might be heated, would fall in either class.

The defendants are manufacturers of tin wash boilers. They first put them on the market under such trade-names as Boilrite or S. B., and then later, appreciating the value of the name "Wear Ever," and knowing that the plaintiff did not manufacture or sell a wash boiler, they have added to their lines of merchandise a better grade of tin wash boiler, either with copper bottom or in some instances made entirely of copper, around which they have placed a paper wrapper entirely covering the sides of the boiler and stamped in large letters with the words "Wear Ever," and also having upon the side, in colors, the picture of a young woman holding before her, by the handles, a wash boiler. This picture resembles in general characteristics the figure of a young woman (extensively used by the plaintiff in its advertisement) holding and raising in front of her by the handles a utensil, to which she seeks to attract attention and to indicate the light and attractive character of the article.

The defendant has cited a number of valid trade-marks such as "Wearever" applied to rubber goods, "Everwear" for harness, shoe leather, etc., "Wearever" applied to tooth brushes, to establish the proposition that the words Wear Ever as a name or sign cannot be monopolized by the person who first uses it as a trade-mark upon a class of articles entirely dissimilar or not connected with some other line of articles upon which the same word is placed as a trade-mark.

[1] Validity of trade-mark cannot depend upon classification or indexing by the Patent Office alone. The defendants have filed a trade-mark consisting of an outline of the Western Hemisphere, with a wash boiler, and the words "Wear Ever" superimposed thereon. This trade-mark was registered as a search of the laundry appliances and machines in class No. 24 did not disclose the "Wear Ever" trade-mark in the cooking utensil class.

A valid trade-mark cannot be obtained for goods in the same general class, having the same descriptive properties, and similar essential characteristics, so that the general public would be misled. Johnson Educator Food Co. v. Sylvanus Smith & Co., 175 O. G. 268, 37 App. D. C. 107. Otherwise mere similarity of mark is not sufficient. G. & J. Tire Co. v. G. J. G. Motor Car Co., 190 O. G. 550, 39 App. D. C. 508.

Many such cases have been cited by the plaintiff showing decisions in the Patent Office and on appeal therefrom, where applications for trade-mark have been disallowed on the ground that conflict between marks applied to goods of similar classes would deceive the public. H. Wolf & Sons v. Lord & Taylor, 202 O. G. 632, 41 App. D. C. 514, where it was sought to use the word "Onyx" for underwear after having been registered for hosiery; the case of Anglo-American, etc., Light Co. v. General Electric Co., 215 O. G. 325, 43 App. D. C. 385, with reference to use of the word "Mazda;" the Fishbeck Soap Co. v. Kleeno Mfg. Co., 216 O. G. 663, 44 App. D. C. 6, where "Kleeno" was sought to be filed for washing materials after having already been filed for polishing material; in Wilcox & White Co. v. Leiser, 276 Fed. 445, decided in the Southern District of New York, it was held that the word "Angelus" could not be used on a phonograph after having been filed to cover a player piano; Van Zile et al. v. Norub Mfg. Co. (D. C.) 228 Fed. 829, where a germicide and cleanser was held to be in the same general class with a washing powder.

When the two classes so overlap and border upon each other that utensils in the laundry class are used to boil or cook water and washing solutions as well as soiled clothes, and on frequent occasions to cook vegetables or to heat glass cans for canning, etc., it will be seen how close the classes are in this direction. The use of cooking utensils for the preparation of starch, heating of water, and even boiling of clothes, or for use as a child's bath-tub, show the closeness of demarcation from the other direction.

The evidence in this case shows that hardware stores sell racks for canning fruit and vegetables in wash boilers, and the public generally fail to recognize any such distinction as that occasioned by the Patent Office classification, particularly as the aluminum dishes and the wash boilers would be sold side by side in the same store.

Confusion could have been avoided if the plaintiff had at any time considered it necessary or advantageous to depart from its use of the word "cooking," and the lack of necessity for limiting their trade-mark is shown by the fact that the certificate of incorporation of the plaintiff company included the making and selling of aluminum articles for "household use" as well as articles for cooking.

The plaintiff manufactures cuspidors out of aluminum, and undoubtedly would have already put upon the market aluminum wash boilers, except that their size has made the cost prohibitive.

[2] This brings us to the question of unfair competition. It is not necessary to show, in a case where the court has jurisdiction to take up the question of unfair competition, that the trade-mark is specifical-

ly infringed. If a defendant is brought into court under the charge of trade-mark infringement, and the case proves to be entirely one of unfair competition, the court may have no jurisdiction over the cause of action unless diversity of citizenship be shown. In the present case we have both grounds of jurisdiction, and the plaintiff certainly makes out a case of unfair competition when it shows that the defendants are placing upon the market an article of tin, in general resembling aluminum, sold in stores dealing in household supplies, in such a way that the "Wear-Ever" cooking utensils and the "Wear Ever" wash boiler would be substantially side by side in its exposure for public inspection and convenience, where the paper wrapper is obviously copied from the plaintiff's advertising matter, where a large portion of the tin surface is covered up so that the uneducated or not-understanding person might fail to note the difference between the metal aluminum and the metal tin, and where the purpose of putting this article on the market in that form is shown by the significant opportunity presented by the plaintiff's failure to have wash boilers as one article in their line of utensils. The defendants seek to excuse their act by showing that their wash boilers are "good" tin wash boilers and that a purchaser is not cheated. They also show that the plaintiff does not sell wash boilers, and therefore there is no competition in the wash boilers themselves. But there is no question that the defendants are endeavoring to take advantage of, and thus obtain unjust gain from the demand "created" in a closely associated and substantially kindred branch of the trade, by giving the impression that their article, at a very cheap price, is one of the more expensive utensils which the public has grown to know as "Wear-Ever" aluminum articles. If the defendants could sell a tin wash boiler of such construction that it could be in no way used for cooking purposes, they could legally use their trade-mark, but still be held liable.

In Van Zile v. Norub Mfg. Co., supra, it was held that the term "unfair competition" covered the sale of an imitation article at cut rate prices, where the articles so resembled each other, and were to be used for the same purpose, that customers buying at retail would fail to notice that they were obtaining the defendant's product, and where the defendant would thereby be able to obtain unjust enrichment by what was in effect unfair competition.

In Aunt Jemima Mills Co. v. Rigney, 247 Fed. 407, 159 C. C. A. 461, L. R. A. 1918C, 1039, it was held that the words "Aunt Jemima," when used with respect to pancake flour, or associated in the mind of the public with a particular product, could not be taken by another manufacturer as a brand for maple syrup, because of the certainty that the public would consider the name in its association with the well known article, and thus even though no injury was inflicted by competition, and even though the sale of the pancake flour might be enhanced by the preparation and sale of a syrup, the court held that the defendants could not take undue advantage and unjustly enrich themselves at the expense of the plaintiff.

The record makes it plain that the defendants are competing unfairly with the plaintiff by trading upon the public's belief in the "Wear

Ever" name and the demand created for "Wear-Ever" articles by the plaintiff's advertising. They are also using a trade-mark which cannot legally exist for use on articles so closely related as the defendants' wash boilers are to the plaintiff's line of goods. The plaintiff has used this trade-mark for a sufficient period so that the public has apparently come to recognize it as a label, independent of registration, and in the use made thereof it is not a mere descriptive term.

For all these reasons the plaintiff is entitled to a decree.