## ROSENBERG BROS. & CO. v. ELLIOTT.

(Circuit Court of Appeals, Third Circuit. September 11, 1925.)

No. 3322.

1. **Trade-marks and trade-names and unfair competition ⚌61—Trade-mark for clothing held infringed by use for hats and caps.**

Trade-mark of plaintiff, manufacturer of coats, vests, and pants, is infringed by defendant's use thereof on hats and caps, all having the same descriptive properties, and being included in Patent Office classification of "clothing."

2. **Trade-marks and trade-names and unfair competition ⚌70(1)—Use of display card of clothing manufacturer by seller of hats held unfair competition.**

For defendant, dealer in hats and caps, to use a display card of the same color, wording, general design, and color scheme as plaintiff, manufacturer of men's clothes, had for years before been using, held unfair competition.

3. **Trade-marks and trade-names and unfair competition** &#8413;97, 101—**In absence of damages capable of computation, relief confined to injunction and costs.**

Any damages of plaintiff, manufacturer of clothes, by infringement of its trade-mark and unfair competition by defendant dealer in hats and caps, being incapable of computation, relief will be confined to injunction and recovery of taxable costs.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Suit by Rosenberg Bros. & Co., a corporation, against John F. Elliott. From a decree for defendant (3 F.[2d] 682), plaintiff appeals. Reversed.

Clarence G. Campbell, of New York City, and Cyrus N. Anderson, of Philadelphia, Pa., for appellant.

Andrew Foulds, Jr., of New York City, and J. S. Freemann, of Philadelphia, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. Rosenberg Bros. & Co., a corporation engaged in the manufacture of men's clothing, having long used the trade-mark "Fashion Park," registered it in three ways: "Fashion Park," "Fashion Park Clothes," and "Tailored at Fashion Park." Discovering that John F. Elliott, a storekeeper in the village of Shenandoah, Pennsylvania, had on sale hats and caps marked "Fashion Park," Rosenberg Bros. & Co. brought this suit, charging him with infringement of its trade-mark and with unfair competition. Elliott, by his answer, traversed these allegations and for further defense said that men's clothing and men's hats and caps are in separate and distinct classes; that he had used the mark "Fashion Park" only on hats and caps, and, therefore, he had not infringed the complainant's trademark; and that men's hats and caps are not sold in competition with men's clothing, therefore in selling hats and caps with the mark "Fashion Park" he had not engaged in unfair competition.

The learned trial court did not discuss the issue of unfair competition, but, limiting its opinion to the issue of trade-mark infringement, it found that men's clothing and men's hats and caps constitute distinct and separate classes of merchandise and that, in consequence, the respondent's use of the mark was not in the line of trade related to that of the complainant within the principle of the Aunt Jemima Case and kindred cases, but its use was in a wholly different line of trade and therefore it was not an infringing use. From the decree dismissing the bill the complainant took this appeal, bringing here for review the same two questions that were tried in the District Court.

Although the law of trade-marks and the law of unfair competition are closely related—the law governing trade-marks being a branch of the broader law regulating trade competition, Barton v. Rex-Oil Co. (C. C. A.) 2 F.(2d) 402, 404; Hanover Star Milling Co. v. Metcalf, 240 U. S. 403, 413, 36 S. Ct. 357, 60 L. Ed. 713—it should be kept in mind that, though alike in principle, they are enough unlike in practice to admit of raising and trying different issues. Yet the distinction between these similar laws is not always observed, as we have found from an inclination of counsel rather frequently to cite the decisions of this court in Akron-Overland Tire Co. v. Willys-Overland Co. (C. C. A.) 273 F. 674, and Howard Wall v. Rolls-Royce of America, Inc. (C. C. A.) 4 F.(2d) 333, as authority for finding infringement of a trade-mark by its use on different but related wares and sometimes as authority for infringement by use on wares that are not related. We pause to note that those cases are not authority on the law of trade-mark infringement at all, for each was tried and decided on the single issue of unfair competition, and then not unfair competition in the sale of goods but in the unfair appropriation and use of a competitor's trade-name—with the intention, of course, thereby to profit in the sale of goods of a related character. Such an act is not infringement of a trade-mark but is a trespass of the same nature as is committed by one who applies another man's name to his own goods. It is a wrong which equity will enjoin even when the goods of the two men do not strictly enter into competition. British American Tobacco Co. v. British-American Cigar Stores Co., 211 F. 933, 128 C. C. A. 431, Ann. Cas. 1915B, 363; Eastman Co. v. Kodak Cycle Co., 15 Reports Patent Cases, 105; Dunlop Pneumatic Tire Co. v. Dunlop Lubricant Co., 16 Reports Patent Cases, 12; Valentine Meat Juice Co. v. Valentine Extract Co., 17 Reports Patent Cases, 673; Dunlop Pneumatic Tire Co. v. Dunlop-Truffault Cycle & Tube Co., 12 Times Law Reports, 434; Premier Cycle Co. v. Premier Tube Co., 12 Times Law Reports, 481—all cited and reviewed in Aunt Jemima Mills Co. v. Rigney & Co., 247 F. 407, 410, 411, 159 C. C. A. 461, L. R. A. 1918C, 1039; Willys-

Overland Co. v. Akron-Overland Tire Co. (D. C.) 268 F. 151, 155, and cases cited.

[1] As the complainant in this case has not charged the respondent with unfair appropriation of its trade-name, but has charged him with infringement of its trademark and with unfair competition by unfair advertising practices, the law of Akron-Overland Tire Co. v. Willys-Overland Co. and Howard Wall v. Rolls-Royce of America, Inc., is not in terms applicable to either issue of the case under review. The case at bar, however, directly raises for the first time in this circuit the question which it has frequently been thought this court decided in those two cases. In order to avoid confusion in our decisions we shall treat the precise question here raised as one of first impression.

In discussing the issue of trade-mark infringement, we first go to the statutes for the law. Act Feb. 20, 1905, § 5 (33 Stat. 725 [Comp. Stat. § 9490]), tells when a mark may be registered, but provides in consonance with the principle of common-law trade-marks that:

"Trade-marks which are identical with a registered or known trade-mark owned and in use by another and appropriated to merchandise of the *same descriptive properties* * * * shall not be registered."

In order to carry out this theory of registration the same Act, while in terms disclaiming registration as a test of trade-mark validity or as a condition of trade-mark protection (section 23 [Comp. St. § 9508]), provides that the applicant shall specify the class of merchandise and give a description of goods comprised in the class to which his trademark is appropriated. In furtherance of the idea of similarity of descriptive properties and classification of the merchandise to which the trade-mark is appropriated, the Act requires that the Commissioner of Patents shall establish classes of merchandise for the purpose of trade-mark registration and that on a single application a trademark may be registered at the option of the applicant for any or all goods comprised in a single class upon which the mark has been used. In respect to classification of merchandise, such as food, wearing apparel, etc., the courts have generally held, notably in the Eighth Circuit, that "the general rule of law upon this subject is that the owner must have used his trade-mark on the same class but not necessarily on the same species of goods as the alleged infringer in order to entitle him to its protection against infringement,"

Layton Pure Food Co. v. Church & Dwight Co., 182 F. 35, 37, 104 C. C. A. 475, 477 (32 L. R. A. [N. S.] 274); Atlas Mfg. Co. v. Street & Smith, 204 F. 398, 405, 122 C. C. A. 568, 47 L. R. A. (N. S.) 1002; William Waltke & Co. v. Schaeffer Co., 49 App. D. C. 254, 263 F. 650; and that, "where a party has been in the habit of labeling his goods with a distinctive mark, so that purchasers recognize goods thus marked as being of his production, others are debarred from applying the same mark to goods of the same description," Hanover Star Milling Co. v. Metcalf, 240 U. S. 403, 36 S. Ct. 357, 60 L. Ed. 713; D. & H. Canal Co. v. Clark, 13 Wall. 311, 322, 323, 327, 328, 20 L. Ed. 581.

This brings us to the question—the central question of fact in the case—whether hats and caps are so closely related to men's clothing, both being wearing apparel, as to be within the same class and of the same description.

The Commissioner of Patents has answered this question, at least for himself, when in complying with the statute he established in the Patent Office classes of merchandise for trade-mark registration and in Class 39, under the head of "Clothing," he included *men's coats, vests, pants, overcoats and hats and caps.*

Opposed to this official classification the learned trial court found as a fact that men's clothes (to which the complainant's trade-mark applies) and men's hats and caps, both outerwear as distinguished from underwear, do not come within one class and cannot be considered as related in the sense of the Act which prohibits trade-mark registration for "merchandise of the same descriptive properties" and which, by the same test, implies non-infringement where goods are not of the same descriptive properties. Though persuasive, we cannot follow the reasoning of the learned trial court. Specifically there is a difference between coats, vests, pants, overcoats and hats and caps. There is no doubt about that. But on a charge of infringement courts, advancing a step from the old law, are to-day less concerned with the species than with the class of goods on which a trademark has been used. When it has been used by the owner and by another on goods of the same class, though different in species, the question whether they are so closely related —so near akin—as to be regarded as having the "same descriptive properties" arises. The leading case involving this question perhaps is the now familiar case of Aunt Je-

mima Mills Co. v. Rigney & Co., 247 F. 407, 159 C. C. A. 461, L. R. A. 1918C, 1039,[1] in which the court announced the principle that "goods though different may be so related as to fall within the mischief which equity should prevent," noting that flour and syrup, though different, are food products, commonly used together, and that the public, seeing the flour mark on syrup, would conclude that it was made by the owner of the mark and on this mistaken belief the public would be imposed upon and the wrongful user would reap the benefit of the owner's reputation and advertisement. The court held that here were "property rights" which should be protected in equity. In thus basing the relief on the complainant's property right in a trade-mark, the court revived a controversy of long standing as to what is the proper basis on which equity will grant relief for trade-mark infringement, whether on a property right in the trade-mark, or because of a tort to property, or because of deceit practiced against the owner or against the public, or because of the right of a vendor to have his mark or his trade protected from irreparable damage. If property, it is property of a qualified nature, for it is settled that no absolute ownership in or exclusive right to use a name as a trade-mark is vested in anyone. Barton v. Rex-Oil Co. (C. C. A.) 2 F.(2d) 402, 403. The last judicial characterization of the ground of equitable

relief for trade-mark infringement and, because of its source, the correct one, was made by the Supreme Court in Hanover Star Milling Co. v. Metcalf, 240 U. S. 403, 413, 414, 36 S. Ct. 357, 360 (60 L. Ed. 713), when it said that:

"It is plain that in denying the right of property in a trade-mark it was intended only to deny such property right except as appurtenant to an established business or trade in connection with which the mark is used. * * * In short, the trade-mark is treated as merely a protection for the good will, and not the subject of property except in connection with an existing business."

The trade-mark of the complainant in this case was, and is, used in connection with its existing business. Its value may consist in the old idea of identifying the origin and ownership of the goods to which it is affixed, but more likely it consists in being known to the public as the name of clothing which, in style and quality, has met with favor. Thus the mark is the owner's "symbol of his good will," a trade asset of very real value; it is his "commercial signature;" it "sells his goods." Knowing this, traders frequently expend large sums in establishing a mark in the public mind—in this case the complainant spent $3,000,000 in five years in advertising its marked products. Where the goods of a trader have become popular not only because of their intrinsic worth, but also by reason of the ingenious and persistent manner in which they have been advertised, the good will acquired in this way takes on still another aspect and is entitled to protection. Money expended in advertising is money invested in business and no one should be permitted to step in and appropriate the advantages of such an investment. Hilson Co. v. Foster (C. C.) 80 F. 896, 897.

Moreover, when a trade-mark has gained a place in the public mind in association with a given product, Pflugh v. Eagle White Lead Co., 185 F. 769, 771, 107 C. C. A. 659, and has come to be regarded as a guaranty of its quality, the public has a right to be protected from deception in its use. Here again arises a controversy running through the books as to whether deception of the public is a ground or merely a test of trade-mark infringement and unfair competition. That deception of the public is a ground for protection undoubtedly has historical justification. "Deceit of the public" as a basis of trade-mark law may be traced to the regulatory and compulsory nature of trade-marks in the early days of guild life and followed

[1] Preceded and followed in varying measure by Van Zile v. Norub Mfg. Co. (D. C.) 228 F. 829; Collins Co. v. Oliver Ames & Sons (C. C.) 18 F. 561; Florence Mfg. Co. v. Dowd, 178 F. 73, 101 C. C. A. 565; Church & Dwight Co. v. Russ (C. C.) 99 F. 276; Enoch Morgan's Sons Co. v. Ward, 152 F. 690, 81 C. C. A. 616, 12 L. R. A. (N. S.) 729; National Picture Theatres v. Foundation Film Corp. (C. C. A.) 266 F. 208; Hercules Powder Co. v. Newton (C. C. A.) 266 F. 169; Wallace & Co. v. Repetti, Inc. (C. C. A.) 266 F. 307; Edgar-Morgan Co. v. Alfocorn Milling Co., Ltd. (D. C.) 270 F. 344; Intern. Film Service Co., Inc., v. Assoc. Producers, Inc., (D. C.) 273 F. 585; Aluminum Cooking Utensil Co. v. Sargoy Bros. & Co. (D. C.) 276 F. 447; Pabst Brewing Co. v. Decatur Brewing Co. et al. (C. C. A.) 284 F. 110; Anheuser-Busch, Inc., v. Budweiser Malt Products Corp. (D. C.) 287 F. 243; Potter-Wringhington, Inc., v. Ward Baking Co. (D. C.) 288 F. 597; Cal. Packing Corp. v. Halferty, 54 App. D. C. 88, 295 F. 229; Anheuser-Busch, Inc., v. Budweiser Malt Products Corp. (C. C. A.) 295 F. 306; Ward Baking Co. v. Potter-Wrightington (C. C. A.) 298 F. 398; White Rock Mineral Springs Co. v. Akron Beverage & Cold Storage Co. (C. C. A.) 299 F. 775; Vogue Co. v. Thompson-Hudson Co. et al. (C. C. A.) 300 F. 509.

down through the cases to the present time. Whether deception of the public be a substantive ground or an evidential test of trade-mark infringement (and of unfair competition) it is, without doubt, a factor which enters into every court's consideration of what it shall find to be dishonest and unfair dealing and of what it shall require for the protection not only of the owner whose trade has been hurt but of those constituting the public who have been, or may be, deceived by the wrongful use of a valid trade-mark or by unfair acts and practices. American Fibre Chamois Co. v. De Lee (C. C.) 67 F. 329, 331; Goldwyn Pictures Corporation v. Goldwyn (C. C. A.) 296 F. 391, 401; Atlas Mfg. Co. v. Street & Smith, 204 F. 398, 405, 122 C. C. A. 568, 47 L. R. A. (N. S.) 1002; Schechter: Historical Foundations of Trade-Mark Law, 150–166.

Returning to the facts of the case it appears that the complainant and its predecessors had been manufacturing and selling men's clothing for more than 50 years in what it terms "a custom tailoring business on a wholesale scale," which it explains to be a business of making clothes on the orders of retail dealers as to styles and materials. When so made, each suit bears a label with the words "Tailored at Fashion Park," followed by the name of the dealer, as Jacob Reed & Sons, Philadelphia. Clothes sold to small dealers bear labels with the words "Fashion Park."

It is common knowledge that men's clothing and men's hats and caps are worn together. According to the evidence in this case, they are ordinarily sold together. They flow through the same channels of trade. Dealers in this country who sell men's suits and overcoats almost universally sell men's hats and caps. And they are advertised together. Moreover, caps are not infrequently made by tailoring establishments to match suits and they are frequently made by hatters out of remnants from tailoring establishments. We think these articles of wearing apparel, falling within the same classification officially made by the Patent Office for the registration of trade-marks, though different in species, are so related as to constitute "merchandise of the same descriptive properties," Collins Co. v. Oliver Ames Co. (C. C.) 18 F. 561; Florence v. Dowd, 178 F. 73, 101 C. C. A. 565; Van Zile v. Norub Mfg. Co. (D. C.) 228 F. 829; National Picture Theatres v. Foundation Film Corporation (C. C. A.) 266 F. 208; Aluminum Cooking Co. v. Sargoy (D. C.) 276 F. 447;

and that the complainant's trade-mark, long used to identify the origin and guaranty the quality of its wares, should not be used by the respondent in leading the public to believe that his hats and caps are made by the clothing manufacturer with whose trademark it is familiar. We find infringement.

[2] The issue of unfair competition is, in our judgment, fraught with less difficulty than that of trade-mark infringement. Such an issue frequently arises where one who has no valid trade-mark nevertheless complains of another who attempts to pass off his own goods as the goods of his rival. Fraud is the basis of his complaint. When fraud is found, a court will frame its action to promote honest and fair dealing, thereby to protect the honest trader, punish the dishonest trader, and protect the public from deception. Goldwyn Pictures Corporation v. Goldwyn (C. C. A.) 296 F. 391, 401; Atlas Mfg. Co. v. Street & Smith, 204 F. 398, 405, 122 C. C. A. 568, 47 L. R. A. (N. S.) 1002. In this case it appears that the complainant spent a great deal of money in advertising its goods. It took two forms: One, full page advertisements in the Saturday Evening Post showing a young man of athletic type dressed in what it regarded as excellent taste and wearing a hat or cap, standing out against a red background; the other form was the same advertisement on cardboards placed in the windows of retail dealers. Both bore the words "Fashion Park." After the complainant had advertised its wares in this way for ten years, a firm of hat-makers—not parties to the suit—who without objection from anyone had long used the word "Park" as a trade-mark for their hats and caps, enlarged their trade-mark by adding the word "Fashion," making it read "Fashion Park," and, with these words, advertised their wares by window cardboards showing an athletic young man, stylishly dressed, wearing a hat or cap, standing out against a red background which differed from that of the complainant's only in tint, discoverable only by placing the cardboards side by side. The respondent purchased hats and caps from this firm and displayed their cardboards in his window. Thus it appears that the complainant advertised its clothing by the picture of a man wearing clothes and a hat or cap, and the respondent advertised his hats and caps by the picture of a man wearing a hat or cap and clothes, both employing the same color scheme. Of course, we do not hold that a trader may monopolize the figure of a man or that he may monopolize a particular color,

Taylor v. Bostick (C. C. A.) 299 F. 232, 234, yet it happened that in the color, wording and general design of the two advertisements there was nothing by which a casual purchaser could readily distinguish one from the other. Although there is no testimony that a purchaser was so deceived, we are of opinion that the advertisements tend readily to deceive the public. Moreover, hats and caps, being within the same field as clothing and made for related purposes and to satisfy the same trade, Van Zile v. Norub Mfg. Co. (D. C.) 228 F. 829; Enoch Morgan's Sons Co. v. Ward, 152 F. 690, 693, 81 C. C. A. 616, 12 L. R. A. (N. S.) 729, should not, in the interest of honest dealing, bear the same trade devices. As we have said, the vendors of the hats and caps on sale in the respondent's store had their own trade-mark, "Park." They seemed satisfied with it until the complainant's mark became known nationally. We find nothing which justified them in enlarging their trade-mark to embrace the precise words of the complainant's trade-mark and thereby to reap the advantage of the wide publicity which the complainant had earned by the expenditure of large sums of money in advertising. It is possible unfairly to obtain such advantage by the use of similar words and get up in advertising matter even though the wares of the contesting parties do not actually come into competition. Against a wrong of this kind courts of equity will grant relief. Vogue Co. v. Thompson-Hudson Co. (C. C. A.) 300 F. 509, 512; Hanover Star Milling Co. v. Metcalf, 240 U. S. 403, 412 414, 36 S. Ct. 357, 60 L. Ed. 713.

[3] We are constrained to reverse the decree of the District Court and direct that the bill be reinstated and the case proceed to final decree in harmony with this opinion. We do not find, however, any satisfactory basis for an accounting against the respondent retailer for damages and profits. The manufacturing wholesalers, the real parties in interest, are not parties to the suit, and, of course, a decree for an accounting would not run against them. The case is peculiarly one where such damage as has occurred is incapable of computation. We see no reasonable probability that any substantial damages could be proved and reduced to dollars with that degree of accuracy which is essential. Nor does the decision on the issue of trade-mark infringement make it necessary to hold that the complainant is entitled to profits. Those cases in which the complainant has been awarded all the profits which the respondent received from the sale of the article wrongfully trade-marked have been cases in which, by the theory of the law, the complainant had lost sales. There is no evidence of lost sales in this case. The complainant's relief, therefore, will be confined to an injunction and recovery of taxable costs in both courts. Vogue Co. v. Thompson-Hudson Co. (C. C. A.) 300 F. 509.