## KOTABS, Inc., et al. v. KOTEX CO.
### No. 4581.

Circuit Court of Appeals, Third Circuit.
June 25, 1931.

David Stoffer and Arthur T. Vanderbilt, both of Newark, N. J., for appellants.

Cyril A. Soans, of Chicago, Ill., and Harold D. Beatty, James A. Dilkes, and Cola G. Parker, all of New York City, for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge.

The plaintiff's registered trade-mark is "Kotex"; its trade name "Kotex Company." The defendants appropriated the whole of the plaintiff's trade-mark and the outstanding word in its trade name and used it, lawfully, they contend, in advertising and selling an altogether different product. The plaintiff, on its bill charging infringement of the trade-mark and unfair competition, had a decree by which the court found the trade-mark valid, ownership of the mark in the plaintiff and infringement by the defendants and enjoined the defendants from using the mark "Kotex" and the word "Kotabs"—their trade name—in marketing their wares. The defendants appealed.

Admitting the plaintiff's right to use its trade-mark on products within the class under which it was registered, the defendants raise as the sole question for review the extent of the plaintiff's rights with respect to its mark and thereby seek to restrict the question to the rule against registering similar trade-marks on merchandise of "the same descriptive properties" (33 Stat. 725; § 5 [15 USCA § 85]) and to the rigid law which for a time was the outgrowth of the rule. The true question, we find, involves more than that. It can easily be seen in a brief statement of the facts.

In 1919 the Cellucotton Products Company, the plaintiff's predecessor, engaged in the business of manufacturing catamenial bandages—sanitary pads or napkins for use by women during menstruation—made of multiple layers of cellulose fiber treated with a suitable deodorant. The product was, and is, unpatented and depends for its commercial success ultimately on its own merit but primarily and essentially on its being made known to women in vast numbers.

Just how that could be done was a serious question, for the ordinary fields of advertising such as leading news-papers and periodicals were, because of the nature of the subject, closed to advertising of this character. Nor, for the same reason, could advertising by other methods, such as counter and window display cards plainly stating the use of the product, be pursued. How then acquaint the public? Here indeed was a real problem. The plaintiff's predecessor—the first in the business in this country—solved it by seeking a trade name for the product which in nowise suggested its use. It hit upon the word Kotex. That is a coined word, arbitrary in the extreme and absolutely without meaning, except as later it identified the plaintiff's products. The original company and then the plaintiff company commissioned artists of high rank to design attractive advertisements which they did in various types, always incorporating somewhere the single word Kotex, without words disclosing the use of the product. For instance, one counter and window display card showed a trained nurse in her attractive uniform with a box marked Kotex under her arm—nothing more. Thus the plaintiff relied upon the curiosity of women to inquire the use of the product so advertised.

The plaintiff's predecessor registered the mark in 1920 and in that year spent $150,000 in advertising sanitary pads, belts and aprons with the mark, and developed a business of $300,000 in 1921. The plaintiff, succeeding the Cellucotton Products Company, was convinced that for the business to be successful the word Kotex must be nationalized and embarked on an advertising campaign, in which, in ten years, it expended $15,000,000—now, $2,500,000 a year—and developed a business of $10,000,000 annually. The trade-mark, meaningless except as the commercial signature of the plaintiff, stands for its good will and has acquired great value, to retain which, however, the plaintiff has had to fight constant infringements by such words as Protex, Rotex, Zeltex, Puritex, Swantex, Cottontex, Femotex, Baytex, Sani-tec, Santex, all of which it has in one way or another successfully combated, until the defendants came along and, unlike the others, did not attempt evasively to imitate the trade-mark, but bodily appropriated the trade-mark itself. They

justify on the ground that they use the mark on a product which is in a class entirely different from that under which the plaintiff's mark was registered.

■■ On the question of lawful use of one mark by two persons on products belonging to different classes and therefore not having "the same descriptive properties," urged by the defendants to be dispositive of this case, we shall state certain settled principles of the law of trade-mark and unfair competition which control the decision of the questions in suit. First, no one can have an absolute ownership in or an exclusive right to use a word or name as a trade-mark. Rosenberg Bros. & Co. v. Elliott (C. C. A.) 7 F.(2d) 962; Beech-Nut Packing Co. v. P. Lorillard Co. (C. C. A.) 7 F.(2d) 967, affirmed 273 U. S. 629, 47 S. Ct. 481, 71 L. Ed. 810. Property in a trade-mark—if such there be—or, more correctly, the right to use a trade-mark exists only when the mark is appurtenant to and used in connection with a business. Hanover Star Milling Co. v. Metcalf, 240 U. S. 403, 413, 414, 36 S. Ct. 357, 60 L. Ed. 713.

Recognizing this law, the Congress provided that a trade-mark lawfully owned and used by one shall not be registered to another for use on merchandise of "the same descriptive properties" (15 USCA § 85). In order effectively to carry out this provision the Commissioner of Patents, as directed by the act, has classified merchandise with respect to its properties and, with the qualification presently to be stated, will register the same trade-mark for use on merchandise of different descriptive properties. So it happens in some cases where trade-mark infringement is the only issue or is one of several issues, as in Rosenberg Bros. & Co. v. Elliott, supra, and Beech-Nut Packing Co. v. P. Lorillard Co., supra, the first, and, it may be, the only question is whether the alleged infringement is use of the mark on a product which falls within or outside the class under which the trade-mark is registered; as in Beech-Nut Packing Co. v. P. Lorillard Co., supra, it was held that a trade-mark for foods was not infringed by using the same mark on tobacco; and as in Rosenberg Bros. & Co. v. Elliott, supra, a suit for infringement of a trade-mark registered under the classification of men's clothing, the court, finding infringement, held that men's hats and caps though not literally yet actually came within the classification. But sometimes, contrary to the defendants' thought, there is more in a trade-mark infringement case than class determination. Infringement may be found when goods, though different, are so related as to fall within the mischief which equity should prevent. This principle was applied in Aunt Jemima Mills Co. v. Rigney & Co. (C. C. A.) 247 F. 407, L. R. A. 1918C, 1039, and Eastman Kodak Co. v. Kodak Cycle Co., 15 Rep. Patent Cases 105; (and cases cited in the margin of Rosenberg Bros. & Co. v. Elliott, supra), where it was found, for instance, that flour and syrup though different are nevertheless food products and photographic cameras and bicycles, being still more different, would, if marketed under the same trade-mark—Aunt Jemima or Kodak—suggest a common origin, induce belief in the public mind that the infringer's wares are those of the mark owner and enable the wrongful user to reap the benefit of the owner's good will greatly to his damage.

Turning to the fact issue of trade-mark infringement, the plaintiff's mark, Kotex, is registered under the classification of dental, medical and surgical appliances. The defendants' product is a medicine in the form of a tablet used for relieving menstrual pains and other pains, and is sold under the mark Kotex by a corporation named Kotabs, Inc., evidently a contraction of the two descriptive words of its product—Kotex-Tablets.

■ The plaintiff's sanitary pad is concededly not a dental or surgical appliance. To be a medical appliance it is not necessary that it contain medicine. It may be, and we think it is, a medical appliance in the sense that adhesive tape is one when used on a sprained ankle, a belt used as an abdominal support, absorbent cotton used as a carrier of medicine for earache, toothache, sore throats and inflamed narial channels and the like. No one of these appliances has curative qualities, yet, like the pad, each has to do with a physical ailment. Ninety per cent. of the drug stores in the United States handle the plaintiff's product and sixty-five per cent. of the product is sold through drug stores or drug departments of department stores; the remainder is sold through stores dealing in women's wares and hotel and station waiting rooms for women. The defendants' product is undoubtedly a medicine, yet it is a medicine for the same physical ailment for which the plaintiff's product is used as an appliance. The two products are related to each other because related in different ways to the same subject. The defendants' representation that their product besides being good for menstrual pains is good for other pains suf-

fered by persons of both sexes and of any age does not alter the fact that it is made and specifically advertised for use in the one ailment for which the plaintiff's appliances are used. The defendants' advertisements and sale of their wares under the plaintiff's restricted trade-mark would inevitably suggest to a woman who favorably knows the plaintiff's bandages that the defendants' medicine is of the plaintiff's make. A woman in this instance is not the "casual purchaser" of the cases; she is an exceptional purchaser in that she would, through modesty, hesitate to make inquiries of a drug clerk about the product and its origin.

It is clear from the evidence that, in appropriating the plaintiff's trade-mark and playing upon its trade name, the defendants intended to appropriate, and have in a measure appropriated, the plaintiff's good will for which its trade-mark stands and on which its very existence depends. The defendants' offer made at bar to withdraw the words "menstrual pain" from their advertisements if they be allowed to continue the use of the mark does not remove the mischief of what still would be an unlawful use.

The applicable law on the issue of unfair competition is briefly this: There was at one time a rule of law, on which the defendants stand and at which they stop, to the effect that there can be no unfair competition unless there is actual competition of some kind. Borden Ice Cream Co. v. Borden's Condensed Milk Co. (C. C. A.) 201 F. 510. But the law since then has taken a step onward. Unfair competition may exist not alone in the sale of goods of the same character but in the unfair appropriation and use of the trade name of another with the intention, of course, thereby to profit in the sale of goods either of a related character or that suggest the origin of the name appropriated. Such an act is not an infringement of a trade-mark, as a trade name, not a trade-mark, is there involved, but it is a trespass of the same nature as that committed by a man who applies another man's name to his own goods. And it is a wrong which equity will enjoin even where the goods of the two men do not enter into competition. Willys-Overland Co. v. Akron-Overland Tire Co. (D. C.) 268 F. 151, affirmed (C. C. A.) 273 F. 674; Vogue Co. v. Thompson-Hudson Co. (C. C. A.) 300 F. 509; Wall v. Rolls-Royce Co. (C. C. A.) 4 F.(2d) 333; Rosenberg Bros. & Co. v. Elliott (C. C. A.) 7 F.(2d) 962, 963.

On the fact issue of unfair competition there is ample evidence to sustain a decree for the plaintiff. The defendants not only appropriated the plaintiff's trade-mark but appropriated its trade name and used it in a way to denote common origin of the two products and thereby deceive the public. Kotex is the plaintiff's trade name as well as its trade-mark. In coining the word Kotabs as the trade name for their corporate actor, the personal defendants, with a world of real and imaginative words open to them, grasped the plaintiff's trade name, split it up and, taking the catch syllable, built on it. Embossing on each of their tablets the letter K, the first letter of the plaintiff's trade name, was, in connection with the advertisements, a further insinuation that the product was that of the plaintiff. All this was nothing short of fraud of the character required to sustain a finding of unfair competition. Rosenberg Bros. & Co. v. Elliott (C. C. A.) 7 F.(2d) 962, 966.

The decree is in all respects affirmed.