**S. C. JOHNSON & SON, Inc., v. JOHNSON.**
**No. 2024.**

District Court, W. D. New York.
Aug. 1, 1939.

Waugh & McClellan, of Chicago, Ill., and Harold I. Popp, of Buffalo, N. Y. (William F. Waugh and Vernon B. Bates, both of Chicago, Ill., of counsel), for plaintiff.

Babcock, Sullivan & Weaver, of Buffalo, N. Y. (John R. Weaver, of Buffalo, N. Y., of counsel), for defendant.

KNIGHT, District Judge.

This is a suit for trade-mark infringement and unfair competition. Plaintiff is a corporation manufacturing finishes, polishes and cleaners for floors. It and its predecessors in interest have engaged in this business since 1888. Its principal place of business is at Racine, Wisconsin, but it has branches in numerous states and some five different countries. Its employees number many hundreds. Its products are sold throughout the world. Its gross sales since 1902 have been upwards of $84,000,000. Total payments for advertising alone have been about $16,000,000. From 1931 through July, 1938, its gross sales were over $35,-000,000, and from 1936 to the same date its total payments for advertising were $2,500,000.

Defendant is the sole owner of Johnson Products Company, under which name he does business. He started in this business in 1932 as a manufacturer of what is called "Johnson's Cleaner." Defendant's product is sold principally through demonstrators in stores. His total output to date has been 368,504 bottles from which he received $224,178.06. He has expended for advertising $8,703.45. The place of manufacture is at Buffalo, New York, and he employs about twenty people. Concededly the defendant uses his own name. His product is a water-colored liquid and is put up in bottles.

The label first used by the defendant on his product bore across its face the word "Johnson's" in large red letters with the word "Cleaner" thereunder in red letters half the size of the word Johnson's. The label itself was of a yellow color. It had a band or strip of black on either edge. Above the words "Johnson's Cleaner" appeared the words "rugs (oriental, domestic) upholstery, mohair, velour and tapestry," and underneath the words "Johnson's Cleaner", "auto upholstery, draperies, woolens, woodwork (painted and enameled) sanitas walls, shades, spats, awnings, felt hats, white shoes." At the bottom of the

label (in small letters) appeared these words: "Copyright 1933 by Johnson Products Co., Buffalo, N. Y." The label now used by the defendant bears the word "Johnson's" printed in large red letters edged with black on a background which is predominately yellow, a large disc of dark blue beneath the word "Johnson's" in which appears the word "Cleaner." Underneath this are these words, "for general housecleaning", and in smaller letters: "oriental and domestic rugs, mohair and velour upholstery, auto upholstery, woolens, painted and enameled woodwork, sanitas, venetian blinds, refrigerators, tile." Thereunder are the words: "Copyright 1938 by Johnson Products Co., Buffalo, N. Y."

Plaintiff has registered the trade-mark "Johnson's" as follows:

Oct. 12, 1915, No. 106108, for powdered wax, prepared wax, wood dye, paste wood filler, varnish remover and floor cleaner.

Nov. 27, 1923, No. 176405, for prepared wax in paste, powdered and liquid forms and for paint and varnish remover.

Feb. 22, 1927, No. 224358, for varnish.

May 8, 1928, No. 241695, for prepared wax in paste, powdered and liquid form.

It also uses the name Johnson's on these other products: "appliers and dusters, enamels, lacquers, auto cleaner and polish, shi-nup furniture polish." Plaintiff uses its trade-mark "Johnson's" in large, conspicuous print on its various products. Plaintiff does not make a cleaner suitable for use on fabrics and upholstery. Defendant claims his product is "essentially" a fabric cleaner, but the label points out several other uses. It describes it as a cleaner for "painted and enameled woodwork, sanitas, venetian blinds, refrigerators, tile."

The grounds for plaintiff's allegations of confusion and infringement lie in the use of the name "Johnson's", which is made a prominent part of the labels used by both parties, and the fact that the products of plaintiff and defendant are displayed and advertised together. While there is similarity of color between plaintiff's and defendant's labels, that question is not in direct issue.

Two questions are presented in this case: (1) Whether the product of the defendant is so related to those of the plaintiff as to constitute "merchandise of substantially the same descriptive properties;" 15 U.S.C.A. § 96. (2) Whether defendant's use of the word "Johnson's" is in a manner tending to mislead the public into believing that his goods are those of plaintiff.

It is thought that, upon reason and in harmony with many decisions of the court in recent years, the products of the parties are of "substantially the same descriptive properties." It is true that plaintiff's trademarks do not specifically cover a "fabric cleaner" or a "general household cleaner", but registered trade-mark No. 106108 does cover floor cleaner. Other products of the plaintiff, not under registered trade-mark, but a natural outgrowth from trade-marked products, include Liquid Wax for floors, Furniture Polish and Shi-nup for silver and general household use. All of plaintiff's products, save the auto cleaner and polish, come within the general description of materials for household use. Plaintiff's Shi-nup was first advertised as a "silver polish," but later as a "household cleaner", although no change was made in the product itself. Plaintiff had the right to extend its trade-mark to related products.

Cases almost without number have considered the classification of goods under the language of the statute. We do not expect to find an exact counterpart in any of these, but the instant case seems fairly comparable with many. Among such are: Aunt Jemima Mills Co. v. Rigney & Co., 2 Cir., 247 F. 407, L.R.A.1918C, 1039; Akron-Overland Tire Co. v. Willys-Overland Co., 3 Cir., 273 F. 674; Vogue Co. v. Thompson-Hudson Co., 6 Cir., 300 F. 509; Wall v. Rolls-Royce, 3 Cir., 4 F.2d 333; Yale Electric Corp. v. Robertson, Com'r of Patents, 2 Cir., 26 F.2d 972; Duro Co. v. Duro Co., D.C., 27 F.2d 339; L. E. Waterman Co. v. Gordon, 2 Cir., 72 F.2d 272; Landers, Frary & Clark v. Universal Cooler Corp., 2 Cir., 85 F.2d 46; Time, Inc. v. Ultem Publications, Inc., 2 Cir., 96 F.2d 164.

This language in Aunt Jemima Mills Co. v. Rigney & Co., supra, is specially pertinent [247 F. 409, L.R.A.1918C, 1039]: "It is said that even a technical trademark may be appropriated by any one in any market for goods not in competition with those of the prior user. * * * But we think that goods, though different, may be so related as to fall within the mischief which equity should prevent. * * *." Again as was stated in L. E. Waterman Co. v. Gordon, supra [72 F.2d 273]: "It is now well settled in this coun-

try that a trade-mark protects the owner against not only its use to the articles to which he has applied it, but upon such other goods which might naturally be supposed to come from him." The present rule of determination is well stated in Rosenberg Bros. & Co. v. Elliott, 3 Cir., 7 F.2d 962, 964, in which case hats and caps were held to come within the descriptive properties of men's clothing. There the court said, in part: "Specifically there is a difference between coats, vests, pants, overcoats and hats and caps. * * * But on a charge of infringement courts, advancing a step from the old law, are to-day less concerned with the species than with the class of goods on which a trade-mark has been used. * * * Thus the mark is the owner's 'symbol of his good will,' a trade asset of very real value; it is his 'commercial signature;' it 'sells his goods.' * * * Where the goods of a trader have become popular not only because of their intrinsic worth, but also by reason of the ingenious and persistent manner in which they have been advertised, the good will acquired in this way takes on still another aspect and is entitled to protection."

Defendant asserts the right to use his own name in doing business. While it is generally true that a surname cannot be appropriated for exclusive use as a trade name, Borden Ice Cream Co. v. Borden's Condensed Milk Co., 7 Cir., 201 F. 510; Brown Chemical Co. v. Meyer, 139 U.S. 540, 11 S.Ct. 625, 35 L.Ed. 247; Emerson Electric Mfg. Co. v. Emerson Radio etc., D.C., 24 F.Supp. 481, affirmed, 2 Cir., July, 1939, 105 F.2d 908; Stix, Baer & Fuller Dry Goods Co. v. American Piano Co., 8 Cir., 211 F. 271, yet, its use by a newcomer to a field of trade may be restrained where it is calculated to deceive, Champion Spark Plug Co. v. Champion, D.C., 23 F.Supp. 638; L. E. Waterman Co. v. Modern Pen Co., 235 U.S. 88, 35 S.Ct. 91, 59 L.Ed. 142; Rochester Savings Bank v. Rochester Savings & Loan Ass'n, 170 Misc. 983, 11 N.Y.S.2d 130, or where its natural tendency will be to mislead the public, Rosenberg Bros. & Co. v. Elliott, supra; Herring-Hall-Marvin Safe Co. v. Hall's Safe Co., 208 U.S. 554, 28 S.Ct. 350, 52 L.Ed. 616; Thaddeus Davids Co. v. Davids Mfg. Co., 233 U.S. 461, 34 S.Ct. 648, 58 L.Ed. 1046, Ann.Cas.1915B, 322, or where the way is opened for dealers to create confusion in the mind of the public.

John H. Woodbury Inc. v. William A. Woodbury Corp., D.C., 23 F.Supp. 162; John B. Stetson Co. v. Stephen L. Stetson Co. Ltd. et al., 2 Cir., 85 F.2d 586; Chesebrough Mfg. Co. v. Old Gold Chemical Co., 6 Cir., 70 F.2d 383.

Many registrations of the name "Johnson's" have been introduced by defendant to show the widespread use of the name on products of many descriptions. Even were such others using the name on identical products, such fact could not avail defendant if plaintiff has been wronged by his action. Bond Stores, Inc. v. Bond Stores, Inc., 3 Cir., 104 F.2d 124; Rochester Savings Bank v. Rochester Savings & Loan Ass'n, supra.

Defendant places special reliance on the decision of the District Court in Emerson Electric Mfg. Co. v. Emerson Radio etc., supra. In the first place the facts are not comparable even though we assume that the court held that electric motors do not come within the same descriptive properties as radios. The decision of the District Court was based on laches. The affirmance in the Circuit Court is on the same grounds and supports the rules of law hereinbefore stated.

It is my conclusion that defendant infringes plaintiff's trade-mark.

If there is error in this decision, there is ample evidence to sustain the charge of unfair competition. It is difficult to dissociate the charges of trade-mark infringement and unfair competition. But the law is well settled that the court will retain jurisdiction to determine the question of unfair competition where no trade-mark infringement is found. Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195; Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148. " 'The law of trade-marks is but a part of the broader law of unfair competition' * * * the general purpose of which is to prevent one person from passing off his goods or his business as the goods or business of another." American Steel Foundries v. Robertson, 269 U.S. 372, 380, 46 S.Ct. 160, 162, 70 L.Ed. 317.

Unfair competition as applied to the instant case means the use of the trade-mark name "Johnson's" by defendant in such a manner upon his label as is likely under ordinary and usual circumstances to deceive purchasers in the belief that de-

fendant's product is that of the plaintiff. Many witnesses have testified to transactions directed to show such deception. On the other hand many have testified to transactions directed to show that purchasers are not deceived. Necessarily the court must weigh all this testimony and consider it under the tests ordinarily applied to the testimony of witnesses. However, decision of the weight of this testimony is largely dependent upon the application of the court's reasoning based upon its own examination of the exhibits. In determining this question, decisions of the court are seldom helpful for comparison. J. Greenebaum Tanning Co. v. Respro, Inc., Cust. & Pat.App., 94 F.2d 818. It is not often that precedents are found. Affiliated Products Co. v. Crazy Water Co., Cust. and Pat.App., 104 F.2d 366. The exhibits are to be considered as a whole in connection with the products involved. Younghusband v. Kurlash Co., Inc., Cust. and Pat.App., 94 F.2d 230. The test of identity is whether an ordinarily prudent purchaser would be liable to purchase the goods of the defendant believing them to have been made by the plaintiff. McDonald & Morrison Mfg. Co. v. Mueller Mfg. Co., 8 Cir., 183 F. 972; Skram Co. v. Bayer, Inc., Cust. and Pat.App., 82 F.2d 615. "It is confusion of origin, not confusion of goods, which controls." Vick Chemical Co. v. Vick Medicine Co., D.C., 8 F.2d 49, 52.

Among the reasons assigned by me for finding such confusion resulting from the use of the word "Johnson's" on the defendant's label and in his advertising, as to unfair competition, are these. The products in question are comparable in some of their uses. They are ordinarily sold in stores in the same department and are grouped in the same advertisements. The surname "Johnson's" is printed conspicuously on the labels of both the plaintiff and the defendant. It is outstandingly conspicuous on defendant's label. Defendant's company name is shown in small type. Many of the plaintiff's products have been sold in large quantities for many years under the trade mark "Johnson's." It is obvious that within the scope of plaintiff's products the name has become identified with the plaintiff in the public mind. There is much evidence that there has been actual deception. Finally, my own impression from observation of the labels is that the use of the word "John-

son's" in the size and in the place employed by defendant on his label would be likely to deceive.

In 1932 defendant was unknown as a manufacturer. The fact that he manufactured "Johnson's Cleaner" then added nothing to his success. Considering his total sales, it cannot be said that he or the Johnson Products Company is now widely known as the maker of this product. It seems to me little damage can result to him from a change in his label now.

■ It is not necessary for the plaintiff to show that there was intentional deception on the part of the defendant, (Notaseme Hosiery Co. v. Straus, 2 Cir., 201 F. 99; Yale & Towne Mfg. Co. v. Worcester Mfg. Co., D.C., 205 F. 952) although there is evidence to sustain such showing. This might well be found upon the emphasis given in print to the word "Johnson's", coupled with the testimony of witnesses Hoover and Lowe as to statements made by the wife of the defendant and the defendant himself.

Defendant should be restrained from using the sole surname "Johnson's" upon his label, and to that extent only should he be enjoined. A change in the label to read "Household Cleaner made by Johnson Products Co." in any chosen size of type would seem sufficient to avoid the charges herein made.

■ Defendant objected to certain proof included in the Depositions herein. Action by the court upon these was held pending the final submission of the suit. The first relates to the testimony of Lucille Hoover aforesaid. This testimony was competent, because it purports to be a statement of an agent of the defendant acting within her authority. Further objection is now made that the line of inquiry pursued with this witness was not within the notice given of the taking of the deposition. This objection was not raised at the trial, and it is too late to raise it now. However, it is thought the objection is immaterial, since the defendant had ample opportunity to inquire into the matter of her testimony after it was given and before the trial was had. This testimony is cumulative. It is material. However, even though it be disregarded, other evidence is sufficient to sustain the plaintiff's suit.

■ Defendant has objected to testimony in the depositions relating to trans-

actions subsequent to the commencement of the action and prior to July 1, 1937. A stipulation was entered into between the parties which provided that no proof of facts occurring subsequent to July 1, 1937, would be offered in evidence. Plaintiff claims that this means that facts to that date could be proved. Defendant asserts that by the stipulation he waived no right to object on any ground. The stipulation seems meaningless unless the plaintiff is right. At various times during the taking of depositions the attorney for the defendant definitely recognized the right of plaintiff to take testimony relating to transactions down to July 1, 1937, and did not raise the objection now urged. There is considerable testimony which has been offered by the plaintiff purporting to show inquiries made by prospective purchasers. It is objected that such inquiries are hearsay. Without this type of proof it would be difficult to show confusion. It seems to me it is competent as showing the state of mind of the prospective purchaser.

This opinion may be taken as satisfying the requirements of Equity Rule 70½, 28 U.S.C.A. following section 723. Further Findings of Fact and Conclusions of Law may be submitted if desired.